**H. M. KOLBE CO., Inc., Plaintiff-Appellee,**

v.

**ARMGUS TEXTILE COMPANY, Inc. and Happy Cottons, Inc., Defendants-Appellants.**

No. 231, Docket 27882.

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1963.

Decided March 14, 1963.

Nathan & Gerstein, New York City (Edward Nathan, Joseph W. Greenberger, New York City, of counsel), for defendants-appellants.

Cowan, Liebowitz & Latman, New York City (Alan Latman, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

This action for infringement of a statutory copyright is before the court for a second time. It is not disputed that Happy Cottons, Inc., one of the defendants below, manufactured and sold nearly identical copies of a textile design registered by plaintiff as a "reproduction of a work of art" under the Copyright Law, 17 U.S.C. § 1 et seq. On May 27, 1960, we affirmed the grant of an injunction *pendente lite* restraining defendants from further manufacture of or sale of fabrics bearing the registered design. H. M. Kolbe Co. v. Armgus Textile Co., 279 F.2d 555 (2 Cir.). The case was subsequently tried before Judge Murphy in the United States District Court for the Southern District of New York, and defendants ap-

peal from a judgment of that court finding Happy Cottons liable for infringement of Kolbe's copyright, permanently enjoining further infringement, and appointing a Special Master to take testimony as to monetary relief which plaintiff should be awarded. The primary question on this appeal concerns plaintiff's alleged forfeiture of its copyright by failure to mark each published copy of its textile design with a notice of copyright as required by 17 U.S.C. § 10.[1] Subject to one modification to be discussed hereafter, we affirm the judgment of the court below.

The design in suit consists of clusters of purple roses, each cluster enclosed and separated from the next cluster by a square border of leaves and petals. By an inversion of the rose clusters in alternate eight-inch squares, a checkerboard pattern is achieved which runs the length and width of the fabric. Kolbe's notices of copyright are printed upon the selvage down one side of the fabric, at intervals of 16 inches. One copyright notice appears for each eight full reproductions of the rose square upon which plaintiff's composite design is based.

Appellants do not maintain that merely by failure to incorporate the notice of copyright *within* the design, rather than upon the selvage of the fabric, Kolbe failed to meet the statutory requirement of a notice "affixed to each copy" of its work. See Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2 Cir., 1960). They do renew their contention, rejected both below and by this court on their former appeal, that the statute requires one notice for *each* rose square of Kolbe's design.

We find nothing in the arguments of counsel or in the trial record to move us from our prior rejection of this contention.

■ The "work" or "reproduction of a work of art" which Kolbe sought to copyright was not merely the single rose square from which its textile design was created. It was rather the composite design itself, which depends for its aesthetic effect upon both the rose figure and the manner in which the reproductions of that figure are arranged in relation to each other upon the fabric.[2] We find no error in the determination below that the work, as thus construed, was sufficiently original for copyright protection. To be sure, a checkerboard configuration, considered apart from the original component squares here present, does not possess even the modest originality that the copyright laws require. But we find no authority for the proposition that every element of an original work must itself bear the marks of originality.

However, to hold, as we now do, that the copyright in suit covered plaintiff's composite design rather than a single element thereof, does not dispose of appellants' contention that, even so, there was insufficient notice of that copyright to satisfy 17 U.S.C. § 10. Because of the continuous nature of the composite design printed on Kolbe's fabric there are conceptual difficulties inherent in determining the limits of the protected "work", and the number of "copies" thereof contained in a bolt of the printed fabric.

■ In satisfaction of the registration requirements of 17 U.S.C. § 13, Kolbe deposited with the Register of Copyrights

---

1. 17 U.S.C. § 10 provides in material part: "Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor * * *."

2. The present case is to be distinguished, therefore, from Dejonge & Co. v. Breu-

ker & Kessler Co., 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113 (1914) upon which appellants rely. There the copyright proprietor had created a gift-wrapping design composed of 12 reproductions of a single picture representing sprigs of holly, mistletoe and spruce. Because the component picture rather than the total design was the copyrighted "work," the Supreme Court held that each reproduction of the picture within the design required a notice of copyright.

two swatches of printed fabric, each of which was of bolt width and approximately one yard long. If these deposited "copies" define the scope of the protected work, it is clear that plaintiff complied with the requirements of the statute by repeating its notice of copyright every 16 inches along the length of its printed fabric. We recognize, however, that to permit the scope of a protected textile design to turn upon the size of the copy deposited by the copyright proprietor "would mean that a single notice, if sufficiently legible, would suffice for the whole bolt * * * if this were what [an owner] purported to copyright." H. M. Kolbe Co. v. Armgus Textile Co., supra, 279 F.2d at 557 (dissenting opinion). In the case of continuous textile designs, therefore, we view the officially-deposited "copy" as setting no more than an outer limit within which published copies must bear the statutory notice. See Dejonge & Co. v. Breuker & Kessler Co., 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113 (1914). Two additional considerations, however, establish to our satisfaction that within that outer limit the statutory requirements have been fully met for each published copy of Kolbe's composite design.

1. From the trial record it appears that patterned textiles of the kind in suit are printed by a single roller which embodies the master pattern and transfers it, through continuous revolutions, to the unmarked fabric. An examination of the printed Kolbe fabric offered as an exhibit below reveals that the basic pattern, as thus defined, is repeated every 16 inches throughout the length of the material. As the notice of copyright is itself printed by the master roller, it, too, is repeated and appears at least once for each repetition of the basic design.

■ 2. By the enactment of 17 U.S.C. § 10, Congress sought to minimize the likelihood of innocent infringement by insuring that each purchaser of a protected work would be alerted to the existence of the copyright claims. See Stecher Lithographic Co. v. Dunston Lithograph Co., 233 F. 601, 603 (D.C.); Sha-

piro, Bernstein & Co. v. Jerry Vogel Music Co., 161 F.2d 406, 409 (2 Cir., 1947), cert. denied, 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837. Textiles are normally sold by the bolt at wholesale, in units of a yard at retail. By repeating its notice of copyright every 16 inches down the length of its printed fabric, therefore, Kolbe affixed at least one statutory notice to each smallest commercial unit by which its product is normally sold. No other practicable arrangement of copyright notices would better have warned defendants below, or other potential infringers, of Kolbe's claim. See Boucher v. Du Boyes, Inc., 253 F.2d 948 (2 Cir., 1958); Scarves v. Vera, Inc. v. United Merchants and Manufacturers, Inc., 173 F. Supp. 625 (S.D.N.Y.1959).

■ We hold that plaintiff did not forfeit its copyright by the manner in which it affixed notices thereof on fabrics of its own production.

Appellants advance a second argument in support of their contention that plaintiff below has forfeited its copyright upon the textile design in suit. Again the alleged cause of forfeiture is failure to mark copies of the design with notices of copyright. This argument, however, is not concerned with alleged lack of notice upon the Kolbe fabric, but with the distribution of fabric unauthorizedly produced by appellants.

At the commencement of the present suit, according to testimony adduced at trial, fabric bearing Kolbe's design, but manufactured and sold by appellant, Happy Cottons, Inc., was in the hands of several garment manufacturers, some of whom were joined as party defendants to the action. The fabric did not, of course, bear any notice of Kolbe's copyright. With a view to settling any disputes arising from this discovery and of eliminating further infringing distributions officers of Kolbe subsequently entered into negotiations with two of these garment manufacturers, Youthline Fashions, Inc. and Bea Wright Frocks, Inc. In the course of these negotiations Kolbe learned that both of these manufactur-

ers had quantities of garments, and fabric already cut up for garments, bearing the Kolbe design. Although the Kolbe representatives were unwilling to permit any use of uncut fabric, they acquiesced in the sale of garments upon which manufacture had already begun, on the ground that failure to permit such sales would work "an extreme hardship" on the two manufacturers. The manufacturers, in return, promised to buy future orders of the designed fabric from plaintiff rather than from Happy Cottons, Inc.

Appellants find in this secondary distribution of their own infringing goods a "sale in the United States by authority of the copyright proprietor" which, under the terms of 17 U.S.C. § 10, required that if the copyright were not to be forfeited each copy be marked with the statutory notice.

■ We find no merit in this contention for appellants have failed to sustain their burden of establishing that the sales in question were "authorized" by Kolbe within the statutory meaning of that term.

■ Section 10 does not impose upon copyright proprietors the duty of policing the distribution of pirated works. Only goods sold "by authority of the copyright proprietor" are required, lest the copyright owner lose the copyright protection that is his, to carry the statutory notice. Normally, of course, the copyright owner will have discharged his obligation in this respect by seeing that each copy of the protected work has the notice affixed to it at the time it leaves his control. Therefore, the fact that unmarked copies of a work have somehow come into the possession of one whom the copyright owner alleges to be an infringer will not, without more, justify the denial of an injunction to protect the copyright owner from further unauthorized distribution:

> "It is not enough to show that the picture was without the statutory notice when it came into the defendant's possession; it must appear that

it left the plaintiff's possession in that condition." Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F. 2d 159, 162 (2 Cir., 1927).

> "If the proper statutory notice of copyright was upon each copy as it left the control and ownership of the proprietor of the copyright, he cannot be responsible for any changes which were afterwards improvidently made upon a particular copy before it came into the hands of the last purchaser." Falk v. Gast Lithographing & Engraving Co., 54 F. 890, 893 (2 Cir., 1893).

And see Edison v. Lubin, 122 F. 240 (3 Cir., 1903), appeal dismissed, 195 U.S. 625, 25 S.Ct. 790, 49 L.Ed. 349 (1904); Altman v. New Haven Union Co., 254 F. 113 (D.C.Conn. 1918).

■ Hence as the copyright proprietor has no affirmative duty to police subsequent distributions of his *own* products, *a fortiori* he has no affirmative duty with respect to subsequent distributions of copies which were never authorized by him to be distributed.

■ Appellants, of course, charge Kolbe with more than the failure, merely, to *prohibit* the sale of unmarked garments by Youthline Fashions and Bea Wright Frocks. They maintain that Kolbe not only knowingly permitted the sales, but also expressly authorized them; and so they maintain the copyright owner thereby forfeited all subsequent protection of its textile design. An examination of the record below, however, does not support this contention.

The president of Youthline Fashions, testifying below on defendant's behalf, stated that Kolbe's representative "knew" that Youthline "had to get rid of" the garments already manufactured or in the course of manufacture at the commencement of the present action. Thus the desire to make the complained-of sales came from the garment manufacturers who had inventory to dispose of. Indeed, it is clear that Kolbe had no interest in furthering these competing sales, but its interest lay in limiting, so far as practi-

cable, the sales of Happy Cottons' fabrics bearing the pirated design.

Whether Kolbe, if it had pursued that course, might have succeeded in preventing the sale of garments already in the course of manufacture, despite the extreme hardship involved for the manufacturers, is open to speculation upon the record below. That appellants themselves were able to defeat the purposes of the injunction by continuing sales after the injunction issued, obviously raises some question about Kolbe's ability to prevent all distributions by Youthline and Bea Wright. Without the ability to prevent the complained-of sales, however, Kolbe's alleged "permission" would constitute mere acquiescence in a course of action it was powerless to control. In all events, Kolbe's acquiescence was clearly a part of a larger endeavor to limit infringing sales by Youthline and Bea Wright insofar as that could be accomplished by an out-of-court settlement with them.

Under the circumstances of this case, therefore, we hold that appellants have failed to prove a forfeiture of Kolbe's copyright based upon Kolbe's acquiescence in sales of unmarked garments bearing the copyrighted design. Hirshon v. United Artists Corp., 100 U.S. App.D.C. 217, 243 F.2d 640, 646 (D.C. Cir.1957).

We turn, finally, to appellants' attacks upon the form of relief fashioned by the court below. They maintain that the court erred in awarding a permanent injunction against Happy Cottons, on the ground that there is no danger of a repetition of the infringement. There is testimony in the record, however, from which Judge Murphy could conclude that such a danger exists.[3] Moreover, Happy Cottons' claims of good faith are scarcely credible in light of sales it made of infringing goods after its officers knew of the commencement of the present action and of the issuance by a federal court of a restraining order against such sales. Mr. Shaff, Happy Cottons' Treasurer, testified:

> "Well, I knew that some kind of an order was signed and I wanted to—didn't want to be lying there with any goods. I made every effort to dispose of it before I was served."

Appellants further contend that the trial court erred in awarding damages, profits, and attorneys' fees against Happy Cottons, and in failing to award costs to appellant Armgus Textile, as to whom the complaint was dismissed below. A Special Master was appointed to take testimony upon the amount of monetary relief to which plaintiff is entitled. The judgment below remains interlocutory, and thus unappealable, as to that issue. See Chadeloid Chemical Co. v. H. B. Chalmers Co., 243 F. 606 (2 Cir., 1917). As Armgus prevailed below it was entitled to full costs, 17 U.S.C. § 116, Amsterdam v. Triangle Publications, 189 F.2d 104 (3 Cir., 1951), and the judgment below must be modified so to provide.

The judgment of the district court is affirmed, as modified, and the cause is remanded to the district court for further proceedings upon the judgment below.

3. At the trial below plaintiff's president testified as follows:
"It is not uncommon in our industry for a good print to lay [sic] dormant for a period of several years and then to have it revived by someone else who would be interested in the same pattern * * *."