**KEY WEST HAND PRINT FABRICS, INC., a Florida corporation, Plaintiff,**

v.

**SERBIN, INC., an Ohio corporation, Defendant.**

**Civ. No. 64-272.**

United States District Court
S. D. Florida.

April 15, 1966.

See also D.C., 244 F.Supp. 287.

James L. Guilmartin and Stanley Jay Bartel, of Guilmartin & Bartel, and M. A. Baskin, Miami, Fla., for plaintiff.

Eugene C. Heiman and Richard E. Reckson, of Heiman & Heiman, and Edwin M. Ginsburg, of Myers, Kaplan & Porter, Miami, Fla., for defendant.

## OPINION

DYER, Chief Judge.

■ This action was brought by Key West Hand Print Fabrics, Inc. v. Serbin, Inc. for copyright infringement of fabric designs known as "Bougainvilla," "Zuzek Rose Butter," and "Dragon," [1] and for unfair competition.

Plaintiff manufactures fabrics by a hand printed silk screen process at its plant in Key West, Florida. The fabrics are displayed and sold in plaintiff's shops in Key West, Florida, and elsewhere, and sold to others who manufacture dresses. Plaintiff also manufactures and sells some dresses and apparel made from its hand printed fabrics.

Lilly Pulitzer, Inc. of Palm Beach, Florida, was plaintiff's largest customer. It purchased silk screen printed fabrics from the plaintiff and had them manufactured into dresses by Gary's Originals, Miami, Florida.

In the early days of the popularity of the Lilly shift dress, Lewis I. Serbin, defendant's Board Chairman, sought out Miss Pulitzer, offered to handle the manufacture of her dresses, had his pattern maker work with her, and arranged to introduce her to his manufacturer, Gary.

Prior to this time, Gary's entire production facilities had been utilized by the defendant for the manufacture of its dresses. In fact, two of defendant's employees, its Vice President and Production Chief, owned a one-half interest in the plant.

At Miss Pulitzer's direction, plaintiff shipped the fabrics purchased by her direct to Gary. The dresses manufactured by Gary included those made up from the copyrighted fabric designs in issue in this case.

The demand for "Lilly's" mushroomed. In March 1963, Serbin and Muriel Ryan, defendant's Vice President and designer, visited plaintiff's plant in Key West and were shown through the retail shop where they examined the fabrics on display, including the copyrighted designs. Serbin indicated a desire to purchase the fabrics and the screens, but plaintiff declined because of its arrangement with Miss Pulitzer.

Thereafter, the infringing fabric designs were made for defendant by C. and J. Ryan Co., a manufacturing establishment operated by the brothers of the defendant's designer. Actually, the defendant had no artists who created fabric designs. It selected fabrics from others for the manufacture of its dresses.

Generally speaking, the plaintiff's designs were created by an artist drawing a pen and ink rendering of a part of a design, using different techniques for different designs, tracing or transferring the designs in different positions onto a transparent acetate, and placing them on the acetate in different ways by shifting the designs from place to place so as to form an interlocking and artistically pleasing complete design or repeat. This was then transferred by a photographic and chemical process to silk screens held in large wooden frames and used to print the cloth. Each frame contained a complete repeat of the design and each repeat had a copyright notice. One silk screen design was combined with another so as to produce an artistic combination of the two designs.

The "Zuzek Rose Butter" rendering was accomplished by an artist drawing the "Zuzek Rose" portion freehand out of her head. Thereafter, a number of additional designs of a similar nature

---

1. At the trial it was determined that, as to "Bougainvilla," the copyright was registered in the joint names of plaintiff and Charles Cervantes. The latter being an indispensable party but not joined as a plaintiff, Count One must be dismissed without prejudice.

were drawn and photographed. The photographs were then artistically arranged and an acetate made of this portion of the design. Superimposed on the "Zuzek Rose" portion of the design were butterflies added in an artistic arrangement.

The "Dragon" design was rendered by a freehand drawing of a dragonfly and a dragon followed by marbleizing on the original design (accomplished by soaking the paper in water and then carefully drawing with India ink the design on the wet paper to give the effect of marble) and additional artistic work on the acetates.

When these composite designs were hand printed on the fabric, they were sufficiently original in creation and arrangement for copyright protection within the purview of Title 17 U.S.C.A. § 7. H. M. Kolbe Co., Inc. v. Armgus Textile Company, Inc., 2 Cir. 1963, 315 F.2d 70, 99 A.L.R.2d 390; Dan Kasoff, Inc. v. Novelty Jewelry Co., Inc., et al., 2 Cir. 1962, 309 F.2d 745; and Peter Pan Fabrics, Inc. v. Dixon Textile Corporation, 2 Cir. 1960, 280 F.2d 800.

During the process of manufacturing, plaintiff placed the statutory notice of copyright on each repeat of the fabric design approximately every 30 inches on the selvage. Defendant takes the position that this was insufficient; that the notice could have been embodied in the design without impairing its market value or its aesthetic appeal; and since the selvage was customarily removed when the goods were cut, there was lack of statutory notice. The experts (including the defendant's), as well as the physical evidence, do not support this assertion.

While it is not unusual for a dress manufacturer to insert his name into a design, and some well known in the retail trade do it particularly for "snob appeal" ("Mr. Dino," "Pucci," "Vera," etc.), it is not feasible for the *printer* or *converter* of the cloth to do so. He sells his product by the bolt, or some equivalent, to the *manufacturer* and not the public. The manufacturer wants to promote his

name, not that of the printer who is unknown to the public. It can hardly be seriously contended that "Dino" or "Pucci" (or any other manufacturer) would accept cloth with the name "Key West Hand Print Fabrics, Inc." and a copyright mark worked into the design if they intended to make it into dresses to be sold to the public.

The defendant had the burden of proving that the notice of copyright could have been incorporated in the body of the design instead of the selvage. Cortley Fabrics Company Inc. v. Slifka, et al., 138 U.S.P.Q. 110, S.D.N.Y., affirmed per curiam, 2 Cir. 1963, 317 F.2d 924. This it failed to do; and under such circumstances, the placing of the copyright notice on the selvage has been repeatedly approved. Peter Pan Fabrics, Inc. v. Martin Wiener Corp., 2 Cir. 1960, 274 F.2d 487; Peter Pan Fabrics, Inc. v. Dixon Textile Corp., supra; Peter Pan Fabrics, Inc. v. Puritan Dress Co., Inc., S.D.N.Y.1962, 207 F.Supp. 563.

After the renderings of "Zuzek Rose Butter" and "Dragon" had been prepared in late 1962, Miss Pulitzer, while on a visit to Key West, was shown them so she could determine whether the original designs would work out well on the cloth before they were printed.

In November 1962, "Zuzek Rose Butter" and "Dragon" were published by being imprinted on cloth with the statutory mark and sold to Lilly Pulitzer and others. The evidence simply does not bear out the contention of the defendant that any of the material was sold without the mark.

The defendant, however, makes a further double thrust: first, that the demonstration of the original drawing of the work which was ultimately copyrighted to a prospective purchaser for the purpose of inducing that purchaser to buy material imprinted with the design was a publication within the meaning of the Act; and second, that the publication of the design in a promotional magazine article utilized as an advertisement by the manufacturer of dresses imprinted

with the design with the knowledge and encouragement of the copyright holder, without the statutory mark, was a dedication of the design to the public.

The short answer to the first contention is that the renderings (and this is what was shown) are not a publication and a notice on them was not required, Title 17 U.S.C.A. § 26. Furthermore, they were not even the complete design.

In any event, under the circumstances here shown, the exhibition of the renderings to Miss Pulitzer to get her opinion or reaction was not a publication resulting in a dedication of the expression of the idea to the public. Even a limited distribution of copyrighted material to prospective purchasers for sales purposes has been held not to affect a forfeiture. Burnett v. Lambino, S.D.N. Y. 1962, 204 F.Supp. 327.

On February 8, 1963, an article appeared in Life Magazine which contained pictures of Lilly Pulitzer's shift dresses, and which were in part identified as being made from the plaintiff's copyrighted designs. No doubt the plaintiff cooperated with Miss Pulitzer in connection with the Life article. It was a good promotional scheme. It succeeded for Lilly and it enhanced the plaintiff's sales. The fact remains, however, that all of the plaintiff's material was printed with the copyright notice beginning with that which first left the factory. Of course, once there was a publication of the goods with the copyright notice, plaintiff did not have subsequent control over the goods. Here the material was sold to Miss Pulitzer, who had it made into dresses and had it photographed for Life Magazine. Plaintiff's "cooperation" did not require it to insist that the statutory mark be displayed in the photographs used by Life.

Relying on Title 17 U.S.C.A. § 13,[2] defendant insists that the plaintiff's delay in complying with the Act's requirements and alleged misstatements in the application invalidate the copyrights.

In November 1962, both "Dragon" and "Zuzek Rose Butter" were published. The original publication date, stated in the application to have been December 31, 1962, was in error. There was no showing, however, that this was other than an innocent misstatement, unaccompanied by fraud or intent to extend the statutory period of copyright protection and does not, therefore, invalidate the copyright. Advisors, Inc. v. Wiesen-Hart, Inc., 6 Cir. 1956, 238 F.2d 706; cert. den. 1957, 353 U.S. 949, 77 S. Ct. 861, 1 L.Ed.2d 858.

The "Dragon" design was deposited in the copyright office on March 11, 1963, and "Zuzek Rose Butter" on May 8, 1963. Defendant notes that some of the plaintiff's fabrics had a copyright notice of "Key West Fabric Company" and that the corporate name "Key West Hand Print Fabrics, Inc." didn't come into existence until early March 1963. Defendant also takes the position that plaintiff permitted eleven months to elapse before bringing suit, and this, with plaintiff's delay in completing its registration, induced the defendant to continue to sell the infringing articles—thus, the action is barred by laches.

The delay in registration was explained by the plaintiff as the result of production problems. So-called "Lilly's" became the rage of the dress-buying public in late 1962 and early 1963, and the demands on the manufacturing of fabric in Key West was great. In any event, registration in the copyright office is only a prerequisite to suit and does not affect the efficacy of the copyright itself. Washingtonian Publishing Company v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 47.

While it is true that the company's original name, "Key West Fabric Company," was changed by charter amendment to "Key West Hand Print

---

2. This section requires a copyright holder to promptly deposit two completed copies of the best edition then published in the copyright office.

Fabrics, Inc." and some of the material with the new name may have appeared before the official change of name took place in the Secretary of State's office, this does not affect the validity of the copyright. Indeed, it is not necessary that the owner's true name be used at all so long as a name with which it is identified is used and no innocent persons are mislead. Moreover, the defendant was a knowing infringer and aware of the existence of the copyright. Dan Kasoff, Inc. v. Novelty Jewelry Company, Inc., et al., supra; Scarves by Vera, Inc. v. Fabrex Corp., S.D.N.Y.1961, 129 U.S. P.Q. 395.

██ There may, of course, be instances where inexcusable delay resulting in prejudice will raise a defense of laches irrespective of the statutory period of three years,[3] but this is not such a case. Here the defendant knew of the plaintiff's rights and was a deliberate infringer. That is enough. Nimer on Copyright, Section 136.

██ The many defenses interposed have been fully considered and are found to be either inapplicable or not supported by the evidence. The copyrights No. K67524 ("Zuzek Rose Butter") and No. K66990 ("Dragon") issued to the plaintiff by the Register of Copyrights are valid.

That the defendant was an infringer would seem abundantly established. However, it takes the position, succinctly stated, that its articles are as similar to the public domain material as they are the copyrighted material, and thus, there is no infringement. Differences in the garments manufactured of plaintiff's material by Lilly, as compared with the garments manufactured by the defendant, are pointed out, i. e., in the "Dragon" design the Lilly background is full of intricate detail while the defendant's is not; the subjects appear to be arranged and planned differently on the cloth; Lilly has a symmetrical pattern while the subjects in the design im-

printed on the defendant's are scattered; the dragon's features are different, etc. In the "Zuzek Rose Butter" the butterflies are different; the rose background is such that at a distance it becomes indistinguishable as a design, etc. In sum, the defendant denies that it copied any original or conceptual "expression" of the plaintiff.

██ The defendant has stated "with tongue in cheek" that it assumes "that the court is proficient in buying women's dresses since it refused to permit experts to lend their advice to the court on the subject of the means used to attract the eye of the female buyer." While the court may lack such proficiency, it is not a disqualifying judicial requisite, for in copying a copyright the test is that of an ordinary observer, not an expert. Here the differences in design are purely incidental and anyone who did not set out to detect the disparities might well overlook them and regard the aesthetic appearances as the same. Peter Pan Fabrics, Inc. v. Martin Wiener Corp., supra; and Doran v. Sunset House Distributing Corp., S.D.Cal.1961, 197 F. Supp. 940, 947.

Furthermore, it was established by a comparison of the fabric design of "Dragon" in defendant's dresses with the actual acetates from which plaintiff's fabrics were made that the defendant's design was an exact copy. Defendant likewise made an exact copy of the "Zuzek Rose" from "Zuzek Rose Butter" and in other instances, copied backgrounds from some copyrighted material and combined them with overprints from others, i. e., the butterflies of "Zuzek Rose Butter" were used by the defendant on an entirely different background.

Infringement by the defendant of plaintiff's copyrighted "Zuzek Rose Butter" and "Dragon" was clearly established. Copies manufactured by the defendant were sold by it to retail outlets in violation of the copyright protection.

---

3. Title 17 U.S.C.A. § 115(b).

In addition to the infringement counts, plaintiff asserts a claim for unfair competition under Title 28 U.S.C.A. § 1338(b).[4] There was no showing that the defendant palmed off its dresses as being the product of the plaintiff or misrepresented to the public that it manufactured "Lilly's." On the contrary, each dress had a Serbin tag sewed into the garment, a hand tag affixed indicating it was manufactured by Serbin, and was on a Serbin hanger. While the defendant knowingly copied plaintiff's designs and color combinations and used them in making dresses and sold them at a price lower than the plaintiff did, this does not constitute unfair competition. Cheney Brothers v. Doris Silk Corporation, 2 Cir.1929, 35 F.2d 279; cert. den. 281 U.S. 728, 50 S. Ct. 245, 74 L.Ed. 1145. See also the recent cases of Sears Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661; and Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U. S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669. Plaintiff attempts to distinguish this case because of a *special relationship* between the plaintiff and defendant through its principal customer, Lilly, (because Lilly bought her fabrics from the plaintiff and had her garments manufactured in a plant which was owned one-half by the defendant through its employees). But this did not create or constitute a confidential relationship between the plaintiff and defendant which is essential for a holding of unfair competition in this category of cases.

It follows that Counts One and Four of the Complaint should be dismissed; that plaintiff is entitled to an injunction restraining and enjoining the defendant from directly or indirectly infringing copyrights No. K67524 and No. K66990 by either making or causing to be made, selling or causing to be sold, copies of these copyrights. Plaintiff is further entitled to have tendered to it by the defendant all copies of the copyrighted garments still in the possession of the defendant within thirty days from the entry of judgment.

Succinctly stated, the plaintiff seeks to prove damages by reason of (a) its loss of profits, (b) the defendant infringer's profits, and (c) attorneys' fees. The defendant counters that (1) the infringements did not cause any legally recoverable damages, (2) there was no competent proof of loss of future profits, (3) there were no infringer profits, (4) attorneys' fees should not be allowed, and finally (5) the Court should not award statutory damages.

The threshold question is, of course, whether the infringements caused damage. The Copyright Act, 17 U.S.C.A. § 101(b), provides in pertinent part:

"(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement * * *."

Plaintiff was organized in August 1961 and began handscreen printing late in that year. While the defendant seems to emphasize that this was a new venture in which the principals had no background or experience, this is beside the point for the fact remains that the plaintiff subsequently did create and copyright two popular fabric designs.

About February 1963, a Life magazine article featured "Lilly" type dresses made by Lilly Pulitzer, Inc. Before this time, plaintiff's principal sales were to Lilly and through plaintiff's retail shop in Key West. Lilly's business boomed and other manufacturers also fed the national fad by placing in the market a substantial number of Lilly type dresses at cheap prices.

Both Zuzek Rose Butter and Dragonfly were very popular fabric designs. Defendant was the first to copy these and put them on the market at a cheap price, and thereafter others followed suit.

During the period March 1, 1963 to May 25, 1963, Lilly purchased from the

---

4. "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trademark laws."

plaintiff 4,000 yards per week of fabric imprinted with handscreen print designs. This order was for an assortment of designs, fifteen in number, including the two in question. Lilly had the right to, and did from time to time, change the quantity of particular designs that were ordered from plaintiff, and the order was subject to cancellation at any time.

On May 25, 1963, Lilly cancelled the entire order because Zuzek and Dragonfly lost their customer appeal when the defendant's cheap copies came out, and because of the copying of the shape of the dress by many manufacturers.

Defendant stresses the fact that prior to March 1963 Lilly had negotiated with one Angus Smith (who had previously worked for plaintiff) to establish a handscreen fabric print business in Miami to provide such fabrics to Lilly for her dress manufacturing operations, and this was accomplished by a loan from Lilly to be repaid to her through her purchase of substantial amounts of cloth. This was proffered by defendant to attack Lilly's credibility and to show a reason (other than infringement) for Lilly's cancellation of orders with the plaintiff on May 25, 1963.

Both points fail. Mrs. Pulitzer testified with candor, and there was no showing that Smith could supply all of the cloth needed by Lilly, and thus take the place of plaintiff. Moreover, Smith could not have produced for Lilly the copyrighted designs in question without being an infringer.

Defendant relies on negatives—that plaintiff did not exert any effort to develop new markets, and that there was no showing that other manufacturers refused to purchase the designs. In the face of the deliberate infringements of the defendant and the consequent result, these arguments are not persuasive.

Finally, the defendant attempts to invoke a collateral estoppel because plaintiff was unsuccessful in proving a count in unfair competition, that defendant attempted to palm off dresses as being the product of the plaintiff which caused the May 25, 1963 cancellation. To hold with the defendant on such a theory would not only effectively destroy the liberality of pleading and proving inconsistent claims for relief, but would benefit the infringer and thus nullify a doctrine, the concept of which was the prevention of injustice.

██ The plaintiff bore its burden of establishing with reasonable probability the existence of a causal connection between the infringement of the defendant and some loss of anticipated revenue.

The plaintiff's claim for loss of future profits was bottomed upon the cancellation of the Zuzek Rose Butter and Dragonfly portion of the Lilly order. Plaintiff kept no record of its actual production, either by the yard or by design. To establish the total number of yards of fabric of all designs produced during the period March 1 to May 25, 1963, plaintiff assumed three work shifts a day, each shift producing 442½ yards of assorted fabric design, or 1,327½ yards per day, or better than 9,000 yards per week, although the total production capacity of the plant was supposed to have been 7,000 yards per week.

To determine the amount of each design in question produced, plaintiff's packing slips were examined and showed that for the period November 1, 1962 to May 25, 1963, plaintiff shipped 13,712½ yards of Zuzek, 6,254¾ yards of Dragonfly and 16,519 yards of unknown assorted fabric designs to Lilly. To determine the amount of each design shipped to Lilly, plaintiff assumed that the known fabric shipped would be in the same ratio to production as the unknown, and thus allocated the 16,519 yards of unknown fabric accordingly, arriving at the conclusion that 17,766½ yards of Zuzek and 6,654¾ yards of Dragonfly were produced in the period November 1, 1962 to May 25, 1963, although this did not take into account the yardage sold in the retail shop on which plaintiff maintained no records.

To arrive at plaintiff's net profit per yard of fabric, plaintiff attempted to establish its cost of production using the period March 1 to May 25, 1963 only.

The cost figures in plaintiff's answers to interrogatories were different from those given at the trial, and again different from those submitted in rebuttal. The basic method utilized was, however, the same.

Plaintiff scheduled each item of expense paid out during the period March 1 to May 25, 1963, and then allocated its costs between its manufacturing and retail operations and arrived at a cost of 83 cents per yard for the production of the two designs. Plaintiff sold its fabric wholesale at an average price of $1.63 per yard for this period, which it claims resulted in a profit of $.7987 per yard or $1,056.00 per week on the sale of 981 yards of Zuzek and 340 yards of Dragonfly. This was arrived at by assuming that the production of these two designs was in the same ratio for the period March to May 1963 as it was for the period November 1962 to May 1963.

The allocation of cost items between plaintiff's retail shop and its factory resulted in expenses in excess of the gross sales of the retail shop without consideration of the cost of the fabrics sold in the shop. The result of this was, of course, to greatly inflate the profit per yard on the fabric.

More important, however, the method used by the plaintiff for computing its costs for the period March to May, 1963 was unreliable. Plaintiff sometimes utilized a cash computation and sometimes utilized an accrued cost computation without any opening and closing inventories for each cost item having been established or known, and sometimes used production figures for one period of time and cost figures for another. For example, the costs for producing the designs were scheduled for the period November 1962 to June 1963 while the payroll was scheduled from January to June 1963 (and in many instances only so much of the payroll was scheduled as was subject to withholding tax instead of the entire payroll). This, of course, would have the effect of reducing costs and raising profits.

The fallacy of this method is demonstrated by the distortions it produced, i. e., the cost of the fabric to plaintiff for production of Zuzek ranged from 30 cents a yard in March 1963 to $14.53 a yard in June 1963. This also disputes plaintiff's claimed cost per yard for cotton broadcloth fabric of $.455 per yard. Plaintiff also submitted that it produced no Dragonfly in November 1962 but had direct costs of $377.57, yet Dragonfly was produced thereafter but there was no cost allocated to this production.

 While it is true that the Court may make a just and reasonable estimate of the damage based upon inferential as well as direct proof because the wrongdoer should bear the risk of any uncertainty in computing damages which his wrong has created, nevertheless, damages cannot be based on speculation and guesswork even though the defendant by his own wrong has precluded a more precise computation. Bigelow, et al. v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652.

 There simply is no basis in the evidence for determining what plaintiff's profit per yard was of the material sold.

Little need be said concerning plaintiff's claim for infringer's profits. Plaintiff established gross sales by the defendant of the three designs in question in an amount of $17,473.31. The defendant proved its costs of production for each style number from its cost records maintained in its regular business operations. Direct costs were allocated upon the basis of actual invoices, and indirect costs on a percentage basis of sales of the dresses in question to total sales.

On the gross sales proved by plaintiff, a loss of $450.20 was incurred on style number 4472; a loss of $395.29 on style number 9928; and a loss of $2,200.90 on style number 9798.

Obviously, there were no infringer's profits.

Here then we have a situation where the defendant deliberately reproduced and appropriated to its own use plaintiff's two copyrighted fabric designs which unquestionably resulted in substantial loss of profits to the plaintiff, but made none for the defendant, and because of factors over which the plaintiff had no control, it was unable to prove with legal precision its damages. "However, the statute [5] anticipates precisely that situation * * * by empowering the Trial Court, in its discretion, 'in lieu of actual damages and profits' to award damages as appear just." Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 2 Cir. 1964, 329 F.2d 194.

Thus, the statute allows "the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits." Douglas, et al. v. Cunningham, et al., 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862. See also F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276.

The only reason advanced by the defendant that statutory damages should not be granted is that plaintiff's proof failed to establish a causal relationship between the infringement and an alleged injury. Having found against the defendant on this issue, there is no need to iterate the reasons here.

There is no doubt but that liability attaches in respect of each copyright that was infringed, and the damages are to be such as the court shall appear to be just. Consideration of the nature of the copyrights, the circumstances of the infringement and the like is the measure of damages to be paid. L. A. Westermann Co. v. Dispatch Printing Company, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499. I entertain no doubt, on the state of this record, that the plaintiff's damages far exceeded $5,000.00 as to Zuzek and $5,000.00 as to Dragonfly as a result of the infringement of each copyright, but the assessment under the statute may not exceed these amounts.

I therefore find that the plaintiff is entitled to recover damages from the defendant under the statute in the sum of $5,000.00 for infringing plaintiff's copyright K67524 (Zuzek Rose Butter) and $5,000.00 for infringing plaintiff's copyright K66990 (Dragon), or a total of $10,000.00.

Plaintiff also seeks full costs and a reasonable attorneys' fee as part of the costs.[6] The award of fees in copyright cases to the prevailing party is not a matter of right. Buck, et al. v. Bilkie, 9 Cir. 1933, 63 F.2d 447; Amsterdam v. Triangle Publications, Inc., 3 Cir., 1951, 189 F.2d 104, but is within the sound discretion of the court. The elements to be considered are no different than in other cases, i. e., the amount involved, time necessarily spent, skill and professional standing and reputation, but this is not to say that because the "usual charges" (as submitted by plaintiff's counsel and their experts) of performing services in this case would have been between $30,000 to $40,000, the Court must accept or assess such fees as costs. There was no continuing infringement here after notice was received by the defendant. Much of plaintiff's counsel's time was devoted to extensive discovery and attempt at proof concerning the Bougainvilla pattern, all of which was unsuccessful because of lack of an indispensable party—this having been raised by defendant at the outset. Neither was plaintiff successful as to the unfair competition count upon which time was spent. And finally, a substantial amount of time was spent in an attempt to prove both plaintiff's damages and infringer's profits, all for naught. In fact, the de-

---

5. 17 U.S.C.A. § 101(b) provides in pertinent part:

"To pay to the copyright proprietor * * * in lieu of actual damages and profits, such damages as to the court shall appear to be just, * * * such damages shall in no other case exceed the sum of $5,000.00 nor be less than the sum of $250.00, and shall not be regarded as a penalty."

6. Title 17 U.S.C.A. § 116.

fendant's answers to plaintiff's interrogatories disclosed higher gross sales figures than plaintiff was actually able to prove.

Under all of the circumstances, while modest, I find that the plaintiff is entitled to recover from the defendant the sum of $10,000.00 as a reasonable attorneys' fee as part of its costs.

Final Judgment in accordance with the foregoing to be submitted within ten (10) days.