**TENNESSEE FABRICATING COMPANY, d/b/a TFC Co., Plaintiff-Appellant,**

v.

**MOULTRIE MANUFACTURING COMPANY and William E. Smith, Defendants-Appellees.**

**No. 26880.**

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1970.

Raymon Sauer, Memphis, Tenn., A. J. Whitehurst, Thomasville, Ga., for plaintiff-appellant.

Jim W. Gipple, Stevens, Davis, Miller & Mosher, Washington, D. C., Sam J. Gardner, Jr., Moultrie, Ga., for defendants-appellees.

Before RIVES, COLEMAN and MORGAN, Circuit Judges.

RIVES, Circuit Judge.

This action for copyright infringement was heard before the court without a jury. Judge Elliott entered judgment for the defendants based upon succinct findings of fact and conclusions of law reported in 159 U.S.P.Q. 363.

Certificate of registration dated September 6, 1960, Class G. No. 26299 is to a 12″ x 12″ architectural metal casting unit intended for use in combination or singly for a decorative screen or room divider to "finish up" a space. The judgment was based upon five different grounds which we have rearranged for convenience of discussion: (1) that the

architectural unit does not possess the minimal degree of creativity required of a work of art; (2) that plaintiff offered no evidence of initial publication with copyright notice; (3) that there was no evidence that all copies of the unit manufactured by the defendant bore the copyright notice; (4) that the notation "TFC Co. ©" on the unit is not adequate notice of copyright; (5) that the photographic representations of the unit in defendant Moultrie's catalog did not constitute copyright infringement but were within the doctrine of "fair use." We do not agree with the district court on any one of the five grounds, nor on its further finding as to (6) whether the changes which defendants made in its revised design suffice to avoid infringing plaintiff's copyright. Answering that question in the negative, we reverse and remand for a determination of damages and entry of judgment enjoining further infringement and awarding damages to the plaintiff.

### (1) *Creativity.*

 The filigree pattern of the unit was formed entirely of intercepting straight lines and arc lines, but was original with the artist employed by plaintiff. It proved to be acceptable to architects, contractors and decorators and commercially successful. In 1962 the defendants came into possession of a copy of the unit on which the copyright notice had been obscured by paint. Using that unit as a mold the defendants made a pattern from the design and marketed the same. They also made a catalog and an advertising mat of the design and distributed them by mail and through their sales representative.

Defendants' use of the design first came to the attention of plaintiff's president in a news release in the Flower & Garden Magazine of September 1962. He telephoned to defendant Smith, the president of the defendant Moultrie, "telling him that this was ours, and he [Smith] intimated that they would do nothing further, and that this would be dropped." The defendants redesigned

their unit by adding four intercepting straight lines in the form of a diamond to the filigree pattern, and made no further sales of a unit identical with plaintiffs. The defendants, however, continued to distribute the catalog and some 2 years later, August 24, 1964, plaintiff's counsel wrote a letter demanding the termination of the production of the design and payment of damages. Mr. Smith replied on August 26, stating that the design was being withdrawn from the new catalog which would be released in January or February of 1965, and that if any orders were received for the product they would be forwarded on to the plaintiff. The defendants, however, continued to use the old catalog until sometime in 1966 and the price list on the item until January 1, 1968. In the new catalog there were contained photographic representations of the design.

"In order to be acceptable as a work of art, the work must embody some creative authorship in its delineation or form." Rules and Regulations of the Copyright Office, 17 U.S.C.A. § 207 Rule 202.10(b); 37 C.F.R. § 202.10(b). "In order to be copyrightable, a work must contain at least a certain minimum amount of authorship in the form of original literary, artistic, or musical expression." Copyright Office Cir. 32. The circular lists as "common examples of uncopyrightable works": "time cards, report forms, graph paper, account books, diaries, checks, score cards, address books, order forms, vouchers, and the like." On the other hand, lack of artistic merit is no bar to copyright. Rushton v. Vitale, 2 Cir. 1955, 218 F.2d 434, 435. Compare 18 C.J.S. Copyright and Literary Property § 26, p. 169.

"All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is

enough if it be his own. [Bleistein v. Donaldson Lithographing Co., 188 U. S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460]."

Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir. 1951, 191 F.2d 99, 102–103.[1] That the filigree pattern on plaintiff's unit was designed by his artist is conceded. The defendants displayed a persistent desire to reproduce or capitalize on the unit. The language of Justice Holmes in Bleistein v. Donaldson Lithographing Co., *supra*, is pertinent:

"It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits. At the one extreme some works of genius would be sure to miss appreciation. Their very novelty would make them repulsive until the public had learned the new language in which their author spoke. It may be more than doubted, for instance, whether the etchings of Goya or the paintings of Manet would have been sure of protection when seen for the first time. At the other end, copyright would be denied to pictures which appealed to a public less educated than the judge. Yet if they command the interest of any public, they have a commercial value,—it would be bold to say that they have not an aesthetic and educational value,—and the taste of any public is not to be treated with contempt. It is an ultimate fact for the moment, whatever may be our hopes for a change. That

these pictures had their worth and their success is sufficiently shown by the desire to reproduce them without regard to the plaintiffs' rights."

188 U.S. at 251, 252, 23 S.Ct. at 300.

We hold that plaintiff's architectural unit possessed at least the minimal degree of creativity required for copyright.

### (2) *Initial Copyright Notice.*

■ Initial publication with copyright notice is a prerequisite to a valid copyright. 17 U.S.C.A. § 10. A rule requires the Copyright Office to reject an application for copyright registration when the copyright notice does not meet the requirements of the law. Sec. 202.-2(b) of the Regulations of the Copyright Office; 17 U.S.C.A. § 207, Rule 202.2(b); 37 C.F.R. § 202.2(b). The certificate of registration "shall be admitted in any court as prima facie evidence of the facts stated therein." 17 U.S.C.A. § 209. The pertinent certificate of registration shows "6(a) Date of Publication: 1st April, 1960." Despite some authority to the contrary,[2] the better rule and that sustained by the weight of authority is that the certificate of registration is prima facie evidence of the validity of the copyright, including the fact that the initial publication was with copyright notice.[3]

### (3) *Subsequent Copyright Notices.*

■ The plaintiff did not have the heavy burden of proving that *all* publications were with copyright notice; instead, the burden rested on the defend-

---

1. *See also* Day-Brite Lighting, Inc., v. Sta-Brite Fluorescent Mfg. Co., 5 Cir. 1962, 308 F.2d 377, 386; H. M. Kolbe Co. v. Armgus Textile Co., 2 Cir. 1963, 315 F.2d 70, 72, 73, 99 A.L.R.2d 390; 18 Am.Jur.2d 336; Copyright and Literary Property § 39.

2. *See* Harms, Inc. v. Pure Milk Ass'n, N.D.Ill.1938, 37 U.S.P.Q. 575; Nimmer on Copyright § 139.2.

3. Gerlach-Barklow Corp. v. Morris & Bendien, 2 Cir. 1927, 23 F.2d 159, 162; Stuff v. E. C. Publications, Inc., 2 Cir.

1965, 342 F.2d 143, 144, cert. denied, 382 U.S. 822, 86 S.Ct. 50, 15 L.Ed.2d 68; Wihtol v. Wells, 7 Cir. 1956, 231 F.2d 550, 553; Flick-Reedy Corp. v. Hydro-line Mfg. Co., 7 Cir. 1965, 351 F.2d 546, 549, cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 301; Rohauer v. Friedman, 9 Cir. 1962, 306 F.2d 933, 935, 2 A.L.R.3d 1395. Compare Hirshon v. United Artists Corp., 1957, 100 U.S. App.D.C. 217, 243 F.2d 640, 644; 18 Am.Jur.2d Copyright and Literary Property, § 151; 18 C.J.S. Copyright and Literary Property § 154.

ants to establish invalidation of the copyright.[4]

*(4) Adequacy of Notice of Copyright.*

■ The district court held that

"The notation TFC Co. © which appeared on the copy of Plaintiff's work which was made of record is not adequate notice of copyright as required by the copyright law since TFC Co. is not the Plaintiff's name nor the name by which Plaintiff is known in the industry and the Plaintiff's full name does not appear elsewhere on the work."

We do not agree with the district court's literal application of 17 U.S.C.A. § 19 to the facts of this case. The Certificate of Registration of the copyright listed the name of the claimant as "Tennessee Fabricating Company d/b/a TFC Co." Abe Sauer, plaintiff's president, testified without contradiction:

"Q. Does Tennessee Fabricating Company do business as TFC Company?

"A. It does. That is our trade-mark and standard name registered with the Federal Government as a trademark."

All of plaintiff's advertising in evidence bore the abbreviation. We agree with the holding of then Chief District Judge Dyer in Key West Hand Print Fabrics, Inc. v. Serbin, Inc., S.D.Fla. 1966, 269 F.Supp. 605, 611, that "indeed, it is not necessary that the owner's true name be used at all so long as a name with which it is identified is used and no innocent persons are misled." Affirmed per curiam, Serbin, Inc. v. Key West Hand Print Fabrics, Inc., 5 Cir. 1967, 381 F.2d 735. *See also* Dan Kasoff, Inc. v. Gresco Jewelry Co., S.D.N.Y.1962, 204 F.Supp. 694, aff'd 308 F.2d 806 (2 Cir. 1962); Doran v. Sunset House Distributing Co., S.D.Calif.1961,

197 F.Supp. 940, aff'd 304 F.2d 251 (9 Cir. 1962); Nimmer on Copyright § 314; 18 Am.Jur.2d Copyright and Literary Property, § 62; 18 C.J.S. Copyright and Literary Property § 71, p. 195, notes 76 and 79.

*(5) Fair Use.*

■■ The district court held:

"The photographic representations which appeared in Defendants' catalog did not constitute copyright infringement and were within the doctrine of fair use for the purpose of advertising the subject architectural units."

The concept of "fair use" is admirably explained by John Schulman in an article in the Iowa Law Review:

"The doctrine of 'fair use,' as a balance wheel and safety valve for the copyright system, was promulgated more than one hundred thirty years ago, as a judicial rule of public policy.[1] * * *

"1. Folsom v. Marsh, 9 Fed.Cas. pages 342, 343 No. 4901 (C.C.D.Mass.1841).

"The authorities are in agreement that the line of demarcation between 'fair use' and copyright infringement cannot be determined by resort to any arbitrary rules or fixed criteria. In each situation, the decision depends on an examination of a variety factors which include:[3]

"3. See Folsom v. Marsh, 3 Fed.Cas. pages 342, 343 No. 4901 (C.C.D.Mass. 1841); M. Nimmer, Copyright § 145 (1963); H. Howell, Copyright Law 151–54 (A. Latman ed. 1962); Schulman, The Copyright Law—Is It a Roadblock to Information Retrieval?, 11 Bull. Copy. Soc'y 369, 375 (1964); Yankwich, What Is Fair Use?, 22 U.Chi.L.Rev. 203, 212 (1954)."

"1. The nature and purpose of the respective works;

"2. The quantity and importance of the portions taken;

---

4. *See* Nimmer on Copyright § 139.2; Comment, Copyright Notice Requirements, 59 Mich.L.Rev. 616 (1961). *See also* authorities cited in note 3, *supra*. Actually there is little doubt that the copyright notice appeared on the initial pub-

lication and all subsequent publications. Three identical copies are disclosed by the record all from the same casting process as the original. Compare Florence Art Co., Inc. v. Quartite Creative Corp., D.C.N.D.Ill.1968, 158 U.S.P.Q. 382.

"3. The relation of the portions used to the respective works of which they are a part;

"4. The impact of the use of these portions upon the demand for the copyrighted publication.

"This flexibility in the concept necessarily flows from the fact that the 'fair use' privilege is predicated upon good faith and fair dealing. It serves the purpose of maintaining a proper balance between the exclusive rights secured to authors under the Copyright Statute, and the correlative right of the public to benefit from those contributions to literature, science, and the arts for which protection is provided for authors and other creators. * * *"

53 Iowa Law Review 832, 833.

The topic of "fair use" is fully and ably discussed by Judge Leonard Moore in Rosemont Enterprises, Inc. v. Random House, Inc., 2 Cir. 1966, 366 F.2d 306–310, cert. denied, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). *See also* 18 Am.Jur.2d Copyright and Literary Property § 109; 18 C.J.S. Copyright and Literary Property § 94(4). All of the authorities agree that to constitute "fair use" the permitted use must be for some legitimate, fair and reasonable purpose. The defendants' sole purpose was to appropriate the plaintiff's design either outright or by frivolous variation. The doctrine of fair use has no application to the conduct of the defendants.

(6) *Defendants' Redesigned Unit.*

■■ The district court found that the defendants complied with plaintiff's request to cease to manufacture its unit "and redesigned its unit by adding additional intercepting straight lines to the filigree pattern." The defendants concede, as they must, that the starting point for their "redesign" was the plaintiff's work. Infringement is not confined to exact reproduction but includes

5. The plaintiff undertook to waive actual damages and relies solely upon statutory "just" damages. *See* 17 U.S.C.A. § 101;

colorable alterations made to disguise the piracy. Gross v. Seligman, 2 Cir. 1914, 212 F. 930; 18 C.J.S. Copyright and Literary Property § 94 c, p. 217. We have no doubt that defendant's "redesign" infringed plaintiff's copyright.

For the reasons stated, the judgment is reversed and the cause remanded for a determination of damages [5] and entry of a judgment enjoining further infringement and awarding damages.

Reversed and remanded.

Key West Hand Print Fabrics, Inc. v. Serbin, Inc., *supra*, 269 F.Supp. at 615.