**HERBERT ROSENTHAL JEWELRY CORP., Plaintiff-Appellee,**

v.

**Jerry J. GROSSBARDT and Stanley Schechter, Co-Partners, trading as Honora Jewelry Co., Defendants-Appellants.**

**No. 157, Docket 34617.**

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1970.

Decided Dec. 21, 1970.

Charles Sonnenreich, New York City, for plaintiff-appellee.

Daniel A. Pollack (Pollack & Singer, Martin I. Kaminsky, Neil D. Thompson, New York City, of counsel), for defendants-appellants.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

---

* Of the Third Circuit, sitting by designation.

FRIENDLY, Circuit Judge:

For the second time this year the jewelry manufacturing firm of Grossbardt and Schechter is before us on a charge of infringing a copyright of Herbert Rosenthal Jewelry Corporation. On the last occasion the copied article was a jewel-encrusted turtle pin, see Herbert Rosenthal Jewelry Corp. v. Grossbardt, 428 F.2d 551 (2 Cir. 1970); this time, it is a jeweled bee. Although the animals differ, the tune remains the same.

The "Writing," Art. I, § 8, cl. 8, for which plaintiff Rosenthal claims copyright protection is a diamond encrusted object in the form of a bee mounted on metal, which is fastened with a pin. Rosenthal claims to have been selling these items of female adornment since 1962. In October 1964 defendants Grossbardt and Schechter obtained one of Rosenthal's bees, made a rubber mold from it, duplicated the bee, allegedly with inferior gems, and sold it at lower prices. When plaintiff learned that its bees were breeding in other apiaries, it retained copyright counsel, who filed a copyright registration on January 13, 1966. The application listed the date of first publication as November 10, 1964. In September 1967, plaintiff's president found a duplicate of its own jeweled bee pin made by defendants. He notified them that Rosenthal owned a copyright on the pin's design and warned them to desist under penalty of suit. Plaintiff's attorney repeated the warning a month later. Both were without effect, and this suit resulted. After depositions developed that defendants had obtained the bee from which their mold was made a month before the first publication alleged in the application for copyright registration, plaintiff obtained an amended registration giving October 15, 1962, as the first publication date. The excuse offered for this discrepancy in dates was that a young lady in plaintiff's office had erred in giving the information used in securing the initial registration. Nothing daunted, defendants continued making and selling the jeweled bees.

Finding infringement, Judge Palmieri entered an interlocutory judgment granting an injunction and directing an accounting of profits and damages before a master. Because of the injunction pending the entry of final judgment, we have jurisdiction of defendant's appeal, 28 U.S.C. § 1292(a) (1).

The principal defense at the trial was lack of originality. In apparent recognition that this defense has been almost drained of meaning as applied to works of art or of artistic craftsmanship, see Nimmer on Copyright §§ 19.2 and 19.3 (1969), appellate counsel has taken a different tack. Believing a bold offense to constitute the best defense, he has assembled a forceful factual broadside against the plaintiff.

The most featured element of the defense stressed on appeal was a claim that the pin was published without the copyright notice required by § 10 and often has continued to be, and that it therefore was and is within the public domain. To show that the pin had been published without the required notice, counsel marshalled a three-pronged assessment of the evidence. He relied first on testimony by Grossbardt and Schechter that the bee they bought in October 1964 bore no copyright mark; second, on testimony of defendants' sales representative about the purchase of an unmarked Rosenthal bee in 1969 from Laykin, a California jeweler; and third, on "autoptic proference" of the mold which shows no copyright mark, combined with testimony that absence of the mark from the mold could be accomplished only by "rubber-wheeling" of the pin and that this would leave an indentation on the mold not identifiable here. But Lindeman, who designed plaintiff's pin and made the mountings, and Herbert Rosenthal, president of the plaintiff corporation, testified that from the initial production and sale of the jeweled bees they regularly imprinted on the back of a wing the letters HR within a diamond and the letter C within a circle. Laykin, who was one of plaintiff's best customers, answered interrogatories to

the effect that the bee pins shipped to him in October 1962 had been so marked, and plaintiff produced photographs of the stamped pin. Defendants' case was weakened by their inability to produce the model bee and, still more so, by their refusal or inability to state where they had bought her. To meet the testimony as to a 1969 purchase of an unstamped Rosenthal bee and, if need be, to counter the possible absence of a marking on the mother bee of 1964, plaintiff relied on § 21 of the Copyright Act which provides that:

> Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it * * *.

■ The argument continues on other fronts. Defendants say the first application for registration, accompanied by a sketch of the bee depicting the copyright notice in an impossible position, shows that the notice had never been affixed until after plaintiff discovered their copying. Moreover, defendants assert that the publication date was fraudulently changed from November 1964 to October 1962 after plaintiff learned that defendants' copying antedated the publication date originally claimed. Plaintiff counters that this was an innocent error. We could go on with other charges and countercharges, and we are not altogether sure how we would have found the facts if that task had been ours. But Judge Palmieri saw and heard the witnesses, except Laykin, and chose to credit the plaintiff's evidence and discredit the defendants'. His findings that plaintiff's bee pins bore a copyright notice from the date of first publication, or that in any event most of them did, and that no fraud was practised on the Copyright Office, were surely not clearly erroneous. Cf. Thom-

as *Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 410, 411 (2 Cir. 1970).

A more serious question, not raised in the turtle case, is whether the notice was sufficient to comply with the statute. Until 1954, the first sentence of § 19 of the Copyright Act directed that the notice "shall consist either of the word 'Copyright' or the abbreviation 'Copr.', accompanied by the name of the copyright proprietor * * *." The second sentence qualified this by saying that for certain objects, including works of art or their reproductions, "the notice may consist of the letter C enclosed within a circle, thus ©, accompanied by the initials, monogram, mark, or symbol of the copyright proprietor: *Provided,* That on some accessible portion of such copies or of the margin, back, permanent base, or pedestal, or of the substance on which such copies shall be mounted, his name shall appear." Prior to 1954, then, plaintiff's notice would not have qualified under the first sentence because it used only ©. Similarly, to the extent that the HR trademark is viewed as Rosenthal's "initials, monogram, mark, or symbol," the notice would have been inadequate under the second sentence which requires that in addition to the initials, the copyright proprietor's name appear on the margin, back, base, pedestal, or mounting substance and the implication would be that initials or a mark would not suffice for that purpose. See *E. I. Horsman & Aetna Doll Co. v. Kaufman,* 286 F. 372 (2 Cir. 1922), cert. denied, 261 U.S. 615, 43 S.Ct. 361, 67 L. Ed. 828; *Goes Lithographing Co. v. Apt Lithographic Co.,* 14 F.Supp. 620 (S.D. N.Y.1936); *Smith v. Bartlett,* 18 F. Supp. 35 (D.Me.1937).

■ However, Congress amended § 19 in 1954, 68 Stat. 1032. The amendment modified the first sentence by adding the symbol "©" to "Copyright" and "Copr.", as a notation which may accompany the name of the copyright proprietor in the notice of copyright. The second sentence of § 19 was left intact. Although the motivation for the amendment was to simplify the problems of

American publishers exporting books to foreign countries, see the letter of the Secretary of State dated July 29, 1953, reprinted in House Report No. 2608, 2 U.S.C. Cong. & Adm.News, pp. 3629, 3633–35, 83d Cong.2d Sess. (1954), it would seem to have had an unintended effect on the problem here presented. Under the amended statute a combination of © and 'the name of the copyright proprietor" suffices in all cases. Hence, the use of © no longer need signify that the copyright proprietor is proceeding under the second sentence of § 19 with its requirement that the proprietor's "name" appear in addition to the initials etc. on the object itself, and leaves room for the argument that the latter may qualify as a name under the first sentence of § 19 despite the antinomy drawn in the second.

Since the 1954 amendment, there have been numerous holdings that the use of a well-advertised or widely known trademark or trade name on the copyrighted article itself will suffice even though no attempt is made to include the proprietor's true name on the base, pedestal, etc. See Hollywood Jewelry Mfg. Co. v. Dushkin, 136 F.Supp. 738 (S.D.N.Y. 1955) (trade name "Hollycraft"); Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., 144 F.Supp. 577 (S.D.N.Y.1956) (Trademark "Trifari"); Dan Kasoff, Inc. v. Palmer Jewelry Mfg. Co., 171 F.Supp. 603 (S.D.N.Y. (1959) registered trademark "Florenza"); Scarves by Vera, Inc., v. United Merchants & Manufacturers, Inc., 173 F.Supp. 625 (S.D.N.Y. 1959) (widely advertised registered trademark "Vera"); Dan Kasoff, Inc. v. Gresco Jewelry Co., 204 F.Supp. 694 (S. D.N.Y.1962), aff'd, 308 F.2d 806 (use of registered trademark "Florenza").

■ On the specific question whether mere initials can constitute an acceptable substitute for the proprietor's "name", thus satisfying the first sentence of § 19, the decisions are not so clear. In Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851 (2 Cir. 1967), cert. dismissed, 389 U.S. 801, 88 S.Ct. 9,

19 L.Ed.2d 56, the plaintiff had imprinted "U.D. Co., Inc." on the sole of the doll's left foot and had printed its full name on the cardboard box in which the doll was packaged. Finding that the box met the statutory requirement of being the substance on which the copyrighted item was mounted, this court sustained the copyright as fitting within the second sentence of § 19, but specifically refrained from deciding whether the inscription on the doll's foot would "constitute a 'mark' under § 19 or adequately identify appellant so as to qualify as a substitute for its corporate name." *Id.* at 853 n. 3. The Fifth Circuit has recently upheld the sufficiency in a copyright notice of the trademark "TFC Co." on a metal casting although the proprietor's full name apparently was not included anywhere on the object or a mounting substance, Tennessee Fabricating Co. v. Moultrie Mfg. Co., 421 F. 2d 279, cert. denied, 398 U.S. 928, 90 S. Ct. 1819, 26 L.Ed.2d 91 (1970). The court decried a literal application of § 19, feeling that the true name need not be used so long as a name with which the proprietor is identified is used and no innocent parties are misled. However, the copyright in *Tennessee Fabricating* had been registered in the name of the plaintiff "d/b/a TFC Co." before the infringing use, and all the advertising which plaintiff put in evidence bore the trademark. Although Rosenthal does not claim to have secured trademark registration at the time the bees were first sold, we still believe that at all relevant times, the HR trademark was widely enough known to serve as an adequate substitute for the full Rosenthal name. In deciding this, we stress the evidence that Rosenthal has used HR as a trade name or mark since 1945, that it applied for trademark registration on June 1, 1962 and received it on Jan. 29, 1963 (barely three months after the first bee was sold), and that defendants and others in the jewelry trade have known perfectly well that HR referred to Herbert Rosenthal Jewelry Corp. In sum, these factors reveal that Rosenthal

has complied with "the substance of what is prescribed in § 19." National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594, 602–603 (2 Cir. 1951); cf. Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc., 73 F.2d 276, 277 (2 Cir. 1934), cert. denied, 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250 (1935). And see Nimmer, *supra,* § 86.2 at 316, and § 86.3. We thus have no occasion to consider the correctness of the statement in Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745 (2 Cir. 1962), that an infringer aware of the existence of copyright is in no position to assert insufficiency of the notice. See Nimmer, *supra,* § 90.4, and cases cited in n. 275.

Judgment affirmed.