Angelo R. PUDDU and Puddu & Martinelli, Inc., Plaintiffs-Appellants,

v.

BUONAMICI STATUARY, INC.,
Defendant-Appellee.

No. 121, Docket 35240.

United States Court of Appeals,
Second Circuit.

Argued Oct. 14, 1971.

Decided Nov. 3, 1971.

Stanford A. Chalson, New York City
(Goldfarb & Chalson, New York City,

and Kenneth S. Goldfarb, New York City, of counsel), for plaintiffs-appellants.

Harvey Stuart, New York City (Hoffinger & Stuart, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, Chief Judge, CLARK, Associate Justice Retired,* and KAUFMAN, Circuit Judge.

FRIENDLY, Chief Judge:

Plaintiffs Angelo R. Puddu, and his licensee, Puddu & Martinelli, Inc., a New York corporation of which he is the sole stockholder, appeal from an order of the District Court for the Southern District of New York dismissing two complaints wherein they sought relief with respect to the defendant's alleged infringement of 12 copyrights owned by Puddu relating to statuettes of elves carrying drums, mandolins, flutes, violins and harps. Four of these copyrights concerned a line marketed by plaintiffs in 1964; the others concerned a line marketed in 1965.[1] Judge Tyler dismissed the complaints on two independent grounds. He considered that the copyrighted statuettes were not sufficiently different from a 1963 uncopyrighted line as to possess the originality required for a copyright. Alternatively he held that the statuettes did not carry notices of copyright adequate to comply with 17 U.S.C. § 19.

■■■ Although "[t]he Copyright Act nowhere expressly invokes the requirement of originality," courts have uniformly inferred this from the constitutional and statutory condition of authorship. Nimmer, Copyright, § 10 at 32 (1971 ed.). However, originality has been considered to mean "only that the work owes its origin to the author, i. e.,

is independently created and not copied from other works." *Id.* § 11 at 33 (footnote omitted). Plaintiffs' employee, Metcalf testified without contradiction that he had sculpted all the copyrighted statuettes "from scratch." While there is a strong family resemblance between the copyrighted and the uncopyrighted models, the differences suffice to satisfy the modest requirement of originality laid down by the Supreme Court in Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 250, 252, 23 S.Ct. 298, 47 L.Ed. 460 (1903) and by this court in Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99 (2 Cir. 1951), and Millworth Converting Corp. v. Slifka, 276 F.2d 443, 444–445 (2 Cir. 1960). While the district court made much of the fact that defendant's statuettes differ from the copyrighted models in minor respects, that does not carry the day for the defendant unless the differences are sufficient to negate infringement. The tests for eligibility for copyright and avoidance of infringement are not the same. Originality sufficient for copyright protection exists if the "author" has introduced any element of novelty as contrasted with the material previously known to him. Introduction of a similar element by the copier of a copyrighted design will not avoid liability for infringement if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2 Cir. 1960). While in the *Millworth* case we found the differences in the accused product sufficient to negate infringement, we do not read the district court's opinion as making that finding here, and since none of the

---

* Of the Supreme Court of the United States, sitting by designation.

1. The complaints also contained claims of unfair competition. Plaintiffs do not dispute that even if the copyright claims were sufficiently "substantial" to afford a basis for pendent jurisdiction under 28 U.S.C. § 1338, the unfair competition

claims must fail under Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and Compco Corp. v. Day-Brite Lighting Co., Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), since the plaintiffs did not press a claim based on confusing labelling but only one based on copying.

statuettes in suit have been exhibited to us, see *infra*, we cannot find this on our own.

While we thus cannot hold that the plaintiff's statuettes lacked that modicum of originality necessary for copyright protection, we sustain the district court's decision on the alternate ground there advanced. Section 10 of the Copyright Act provides that any person entitled thereto "may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice shall be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor. * * *" Section 19 of the Copyright Act, as amended in 1954, provides in pertinent part: [2]

The notice of copyright required by section 10 of this title shall consist either of the word "Copyright", the abbreviation "Copr.", or the symbol "©", accompanied by the name of the copyrighted proprietor, and if the work be a printed literary, musical, or dramatic work, the notice shall include also the year in which the copyright was secured by publication. In the case, however, of copies of works specified in subsections (f) to (k), inclusive, of section 5 of this title, the notice may consist of the letter C enclosed within a circle, thus ©, accompanied by the initials, monogram, mark, or symbol of the copyright proprietor: *Provided*, that on some accessible portion of such copies or of the margin, back, permanent base, or pedestal, or of the substance on which such copies shall be mounted, his name shall appear. * * *"

In Herbert Rosenthal Jewelry Corp. v. Grossbardt, 436 F.2d 315, 317–319 (2 Cir. 1970), our latest discussion of questions like those raised here, which was not cited in the briefs of either side, we pointed out that the 1954 amendment of the first sentence of § 19, made for another purpose, had the unintended effect of enabling copyright holders to argue that trademarks or initials could qualify under the first sentence, although the clear antinomy in the second sentence made it apparent that, in order to satisfy that, the full name must somewhere appear.

The district court found that plaintiffs endeavored to comply with § 19 in their 1964 line by placing on the base of each statuette "ARP" and a © and embossing on the back of each elf additional markings, "presumably purporting to be the name, Angelo R. Puddu, but which I cannot decipher, even with the aid of a powerful reading glass." On April 2, 1964, Puddu had filed with the New York County Clerk a certificate of doing business under the name of "ARP." In the case of the 1965 line, plaintiffs simply embossed on the back of each elf "ARP" with a "©". The judge found that this was legible only as a result of what he had learned and seen in four days of trial, and also that, in the case of both lines, the material embossed on the back "cannot be observed until the clothing is partially removed, no easy task for a male of the species who is unsophisticated in the fine arts of pinning brocade and other fabrics."

Subject to the point discussed at the end of this opinion, these findings dispose of the claims with respect to the 1965 line unless they are clearly erroneous. See Nimmer, Copyright § 88.2 and cases cited in notes 180 and 181. Although one would have supposed that, on an appeal such as this, counsel would have had the copyrighted and the accused statuettes in court, they did not. When we asked to see the copyrighted statuettes that had been received in evidence, appellant's counsel undertook to produce them. He later advised us that they had been lost but that he would furnish others; appellee objected to our considering these. Even if we were to consider the example of the 1965 line so

2. The statutettes fall under § 5(g) which includes "Works of art."

produced, we could not fault the findings of the district judge.

This leaves the 1964 line, with respect to which the court seems to have found the ARP marking on the base to be legible, although the supposed name on the back was not.[3] We noted in Herbert Rosenthal Jewelry Corp. v. Grossbardt, supra, 436 F.2d at 318, that "Since the 1954 amendment, there have been numerous holdings that the use of a well-advertised or widely known trademark or trade name on the copyrighted article itself will suffice even though no attempt is made to include the proprietor's true name on the base, pedestal, etc." In support of this we cited the cases mainly relied upon by the appellants. But these cases are clearly inapplicable here, since there was no proof that ARP was "a well-advertised or widely known trademark or trade name." Turning to the issue here presented, "whether mere initials can constitute an acceptable substitute for the proprietor's name, thus satisfying the first sentence of § 19," we found that "the decisions are not so clear." We noted that Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F. 2d 851 (2 Cir.), cert. dismissed, 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967), rested on the ground that the second sentence of § 19 had been complied with by printing the full name of the copyright holder on the box and that the court had refrained from deciding whether imprinting "U.D.Co." on the sole of a doll's foot would alone constitute sufficient compliance. We also noted that the decision in Tennessee Fabricating Co. v. Moultrie Mfg. Co., 421 F. 2d 279 (5 Cir.), cert. denied, 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970), upholding the sufficiency of "TFC Co." rested on the facts that the copyright had been registered in the name of the plaintiff "d/b/a TFC Co." and that all the advertising put in evidence by the plaintiff bore that trademark—factors also not present here. Our own decision relied primarily on Rosenthal's having been a long established and well-known jewelry house which had used "HR" as a trade name or mark for nearly 20 years before the infringement, and had applied for trademark registration before and had received it only shortly after sale of the accused products had begun. There is no corresponding proof with respect to "ARP".[4] A brochure with respect to the 1964 line handed to us at the argument gave the name of the manufacturer as Puddu & Martinelli and used "ARP" only after the words "©" 1964 and this on a page containing pictures of statuettes wholly different from those here in suit. The filing of a certificate permitting Puddu to do business under the assumed name of "ARP" is a long way from the proof held sufficient in these prior cases. We thus cannot say that, even as to the 1964 line, the appellant has complied, "in substance" with the requirements of § 19. National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594, 602–603 (2 Cir. 1951); Herbert Rosenthal Jewelry Corp. v. Grossbardt, supra, 436 F.2d at 319.

■ Appellants argue finally that full compliance with § 19 is unnecessary since, as a result of an earlier unsuccessful unfair competition suit by them in the state courts, defendant had become aware of the identity of "ARP" before it allegedly copied the copyrighted statuettes. In Herbert Rosenthal Jewelry Corp. v. Grossbardt, supra, 436 F.2d at 319, we indicated skepticism with respect to the broad dictum in the per curiam opinion in Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745, 746 (2

---

3. The "1964" statuette submitted to us is obviously different from the one offered in evidence, since it has on the base "1964" preceded by a "©" and, underneath, "Angelo R. Puddu." The latter words are certainly legible. However, we cannot predicate decision on an unauthenticated exhibit so plainly differing from the one that was before the district court.

4. If other requirements were satisfied, we should not suppose it to be fatal that here the initials were on the base since this was an integral part of the statuette.

Cir. 1962), that defendants who are "wholly aware of the existence of copyright" can never "assert insufficiency of copyright notice." That and similar statements in district court opinions fail to take adequate account of the plain language of § 10 and also of Thompson v. Hubbard, 131 U.S. 123, 9 S.Ct. 710, 33 L.Ed. 76 (1889). The Supreme Court there held that, under the Copyright Act of 1874, failure to state the name of the copyright holder was fatal even in the extreme case of an infringement action against a previous owner of the copyright which had transferred it to the plaintiff. The Court said, "This right of action, as well as the copyright itself, is wholly statutory, and the means of securing any right of action in Hubbard [the plaintiff] are only those prescribed by congress." 131 U.S. at 151, 9 S.Ct. at 720 (citations omitted). Although the Act of 1874 made the notice a condition of bringing an action for infringement rather than of copyright, we cannot perceive that to be a material distinction; indeed the Court in *Hubbard* cited earlier copyright acts where, as in the present statute, notice was made a condition on the copyright itself.[5] Although Professor Nimmer states that even illegible notices may be good "as against infringers who managed to decipher them or who should have been put on inquiry by the illegible printing, or who had actual notice of the plaintiff's copyright," Nimmer, Copyright § 90.4, only three of the seven decisions cited,[6] can be said to support this proposition.

Whatever may be the precise scope of the principle on which the appellants rely, it does not go so far as to confer copyright protection when the "name" of the copyright holder is so illegible and the initials are so far from constituting a name, as the district court permissibly found here.[7]

Affirmed.

---

5. Contrast the less rigid provision with respect to patents, 35 U.S.C. § 287.

6. All these are by district courts: Trifari, Krussman & Fishel v. B. Steinberg-Kalso Co., 144 F.Supp. 577, 581–582 (S.D.N.Y. 1956); Prestige Floral, Societe Anonyme v. California Artificial Flower Co., 201 F.Supp. 287, 291 (S.D.N.Y.1962); Florence Art Co. v. Quartite Creative Corp., 158 U.S.P.Q. 382 (N.D.Ill.1968).

7. Appellant's reliance on such cases as National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594 (2 Cir. 1951) and Schellberg v. Empringham, 36 F.2d 991 (S.D.N.Y.1929) is entirely

misplaced. Those cases, addressing themselves to what is now § 21 of the Act, turned on accidental or mistaken omissions from particular copies. Where, as in this case, nothing in the record or the district court opinion indicates that the plaintiff's notices are not uniformly inadequate, § 21 has no application. A mistake of law is not within the purview of § 21. Wildman v. New York Times Co., 42 F.Supp. 412, 417 (S.D.N.Y.1941). Deliberate use of a notice which does not meet the requirements of the Act will not be saved by § 21. Advertisers Exchange Inc. v. Anderson, 144 F.2d 907, 909 (8 Cir. 1944).