VIDEOTRONICS, INC., a Nevada
corporation, Plaintiff,

v.

BEND ELECTRONICS, an Oregon corpo-
ration, Videotronics of Oregon, Inc., an
Oregon corporation, and Video Hori-
zons, Inc., an Oregon corporation, De-
fendants.

CV–R–83–310–ECR.

United States District Court,
D. Nevada.

April 26, 1984.

Ken McKenna, Reno, Nev., for plaintiff.

William A. Birdwell, Portland, Or., and Gordon H. Depaoli by Suellen Fulstone, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

### BACKGROUND

Plaintiff seeks a preliminary injunction enjoining defendants from infringing upon

computer programs allegedly protected by copyright. These programs are known as "Joker Poker" and "Keno Keypad" and are used to operate gambling and amusement games. The Joker Poker game is also known as Wild Poker, and defendants have manufactured (or caused to be manufactured), sold, and distributed an almost identical game (with a virtually identical computer program), known as "Triple Up Poker."

### The Programs

Plaintiff manufactured a so-called "two board"[1] Joker Poker program from late 1981 until late February, 1983. The two-board version of Joker Poker was not programmed to display a copyright notice as required by 17 U.S.C. § 401. The preponderance of the evidence is that plaintiff sold 28 of these non-complying programs to defendants who in turn distributed them. There is no evidence that plaintiff has made any effort to have a copyright notice incorporated into the 28 two-board Joker Poker programs which were sold as a part of two-board games.

Early in March of 1982, plaintiff converted the two-board version of Joker Poker to a one-board version, and from that time on plaintiff manufactured and sold only one-board programs. A copyright notice was incorporated in all of the one-board Joker Poker programs. The notice is programmed to appear on the game's video screen on a random basis about once in every five to ten games played. In addition, it always appears when the game's reset button is pushed to put the game in operation, or to restart it after repairs. This reset button, however, would rarely if ever be used by the game-playing public. Except for the insertion of the copyright notice, no change was made in the Joker Poker program at the time that it was converted to a one-board system. The most credible evidence is that between 250 and 300 one-board Joker Poker games, programmed to display a copyright notice, were manufactured by plaintiff, and sold to defendants for distribution.

We also find that, in contrast to Joker Poker, the Keno Keypad program has always contained a copyright notice, and that that notice is programmed to be on display throughout the period that the game is in operation. Finally, since a perfect circle could not be created on a video screen, the copyright notice for both games consists of a "C" surrounded by a hexagonal figure.

### The Present Dispute

Prior to the present dispute plaintiff manufactured Joker Poker and Keno Keypad games, among others, and defendants distributed them for plaintiff. The dispute arose over money owed to plaintiff by defendants and the failure of plaintiff to continue to supply games to defendants in accordance with a distribution contract then in effect between the parties. Since the onset of the present dispute, defendants have not paid plaintiff and plaintiff has discontinued the supply of the games to defendants. In addition, defendants copied plaintiff's computer programs for Joker Poker and Keno Keypad. Plaintiff did not give them permission to make these conversions. Defendants contracted with one Walt Fraley to manufacture the games (including the computer programs),[2] and they now sell the games directly.

### Previous Litigation

In *Videotronics, Inc., v. Bend Electronics,* 564 F.Supp. 1471 (D.Nev.1983)[3] ("Videotronics I"), plaintiff alleged that the defendants had misappropriated one of its video games[4] but did not make a claim of copyright infringement. We denied relief,

---

**1.** A "two-board" program refers to a program that contains two electronic circuit boards.

**2.** Mr. Fraley may have been responsible for the deletion of the copyright notice from the computer programs for the games he has been manufacturing.

**3.** *See* Case No. CV-R-83-106-ECR (Document No. 26).

**4.** Plaintiff is not at this time seeking copyright protection for the game (Challenger Wild Poker) involved in Videotronics I.

noting that "a property which is subject to protection under federal patent or copyright law cannot also obtain the benefit of protection under either state unfair competition or misappropriation law...." *Id.* at 1476.

Shortly after our decision in *Videotronics I,* plaintiff applied for federal copyright protection. However, the spaces on the Copyright Office's application forms in which plaintiff was to provide information relating to the "Date and Nation of First Publication," were left blank. See Exhs. 7 & 8 to Defendants' Exh. U.[5]

## ANALYSIS

### *"Co-Authorship"*

■ Defendants claim that through contributions of their employees, they are coauthors or co-creators of the programs in question, or that their creation was a joint work of plaintiff and defendants. There is no credible evidence to support these claims. Defendants simply copied plaintiff's programs and are using them for their own benefit and profit. The programs in question were created by and are the property of plaintiff. Nor is there credible evidence of a joint enterprise between plaintiff and defendants which resulted in the creation of the subject programs. Finally, defendants did not adduce any credible evidence to support their claim of estoppel.

### *Adequacy of Copyright Notice*

The next issue to be addressed by the Court is whether the programs contain the required copyright notice.

### *Form of Notice*

■ The copyright notices that are displayed in both the Keno Keypad and Joker Poker games are adequate in terms of form. The fact that the letter "C" is sur-

rounded by a hexagonal shape rather than a circle does not make the notice any less recognizable. Defendants' attempt to place this hexagonal figure in the same category as a set of parentheses (i.e., a "(C)")—a symbol that they claim has been rejected by the Copyright Office—is without merit. It is obvious that the hexagonal figure completely surrounds the letter "C," while parentheses would only partially surround it. Furthermore, from a relatively short distance the hexagonal figure closely resembles a circle.

### *Frequency of Notice*

■ Defendants contend that the copyright notice on the Joker Poker game appears too infrequently to be valid. The statute governing this issue is 17 U.S.C. § 401(c), which provides

> The notice [of copyright] shall be affixed to the copies in such manner and location as to give reasonable notice of the claim of copyright. The Register of Copyrights shall prescribe by regulation, as examples, specific methods of affixation and positions of the notice on various types of works that will satisfy this requirement, but these specifications shall not be considered exhaustive.

On December 1, 1981, the Copyright Office issued a regulation specifying "examples of methods of affixation and positions of the copyright notice on various types of works that will satisfy the notice requirement of section 401(c) ...." 37 C.F.R. § 201.20(a). Pursuant to the statute, the examples are not intended to be exhaustive. *Id.* However,

> [i]n all cases dealt with in this section, the acceptability of a notice depends upon its being permanently legible to an ordinary user of the work under normal conditions of use, and affixed to the copies in such manner and position that,

---

**5.** Exh. U is a transcript of a deposition of plaintiff's counsel, Mr. McKenna, taken on February 16, 1984. It appears that these exhibits (7 & 8) represent the valid registration certificates, and that the certificates issued in July of 1983 (copies of which are attached as exhibits to the Complaint herein) are no longer valid. See Exh. 6 to Exh. U. They appear to have been replaced by the certificates shown in Exhs. 7 & 8, which bear an effective registration date of October 25, 1983. Defendants have not called attention to this discrepancy, however, and we do not consider it to be significant for the purposes of this Order.

when affixed, it is not concealed from view upon reasonable examination.

*Id.* 201.20(c).

In the present case, plaintiff's work "cannot ordinarily be visually perceived except with the aid of a machine or device." *Id.* § 201.20(g). For such work, the Copyright Office offers these examples of "acceptable methods of affixation and position of notice":

—A notice that is displayed at the user's terminal at sign on;

—A notice that is continuously on terminal display;

*Id.*

Section 401(c) and its accompanying regulation have significantly liberalized the standards by which adequate affixation and positioning of notice is judged. As such, they require a greater effort on the part of one "who is looking for the truth and who desires to avoid infringement."[6] However, the standards have not been relaxed so far as to permit approval of Joker Poker's copyright notice, which appears on a random and infrequent basis.[7] Such an appearance does not meet the requirement of permanent legibility to "an ordinary user of the work under normal conditions of use."[8] Likewise, the fact that the notice is displayed when the reset button is pushed does not provide adequate notice, since this means of display is in effect "concealed" from the view of those who do not have access to the reset button—a group which would include most members of the public.[9] 37 C.F.R. § 201.20(c).

*Are the Omissions Excused?*

■ Plaintiff's failure to incorporate an adequate copyright notice in the Joker Poker program does not invalidate its copyright if:

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years

---

**6.** *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 277 (2d Cir.1934), *cert. denied* 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250 (1935). The liberalization of the positioning requirement for books, which has taken place over a long period of time, is particularly instructive in this regard. Prior to the enactment of the current copyright statute, a copyright could be forfeited if the copyright notice for a book were placed anywhere except its "title page or the page immediately following." *Moger v. WHDH, Inc.*, 194 F.Supp. 605, 606 (D.Mass.1961). The purpose of this requirement was apparently to eliminate the need for a reader to examine all of the pages of a book in order to ascertain whether or not it was copyrighted. *Freeman v. The Trade Register, Inc.*, 173 F. 419, 425 (W.D.Wa. 1909). Under current regulations issued by the Copyright Office, however, the copyright notice for works published in book form can be placed in any of a number of locations, including the title page, the last page of the main body of the book, or either side of the back cover of the book. 37 C.F.R. § 201.20(d). These regulations obviously contemplate a greater effort on the part of a reader looking for a copyright notice, than was required under previous law. Nevertheless, the regulations do restrict notice to certain locations that are either near the front or near the back of the book, so that random placement of the copyright notice in a book would not be permitted.

**7.** This particularly true in view of the fact that there was no evidence that a constant (or at least regular) display was not technologically feasible. As noted in the text of this Order, the Keno Keypad notice appeared constantly during the game's operation.

**8.** In *H.M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70 (2d Cir.1963) the work for which protection was sought consisted of a fabric pattern which was repeated every 16 inches throughout the length of the material. The notice of copyright "appeared at least once for each repetition of the basic design." *Id.* at 73. The court held that the plaintiff had affixed "at least one statutory notice to each smallest commercial unit by which its product is normally sold." *Id.*

Applying this test to the subject of video games, it would appear that a single game would constitute the "smallest commercial unit" by which this "product" is normally sold. The evidence, however, indicates that Joker Poker's copyright notice appears only in every fifth to tenth game played. Thus, a "normal user" would have to play at least five to ten games before being exposed to a copyright notice. We do not believe that this constitutes "reasonable notice of the claim of copyright" under 17 U.S.C. § 401(c).

**9.** According to the testimony received by this Court, access to the reset button requires a key, which presumably only a small number of persons would possess.

after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered.

17 U.S.C. § 405(a).

Since we have found that the copyright notice that was eventually incorporated into the single-board Joker Poker program is inadequate, we are forced to conclude that more than a "relatively small number of copies" of the Joker Poker game lack the required notice. Therefore, plaintiff cannot claim protection under § 405(a)(1).

■ Section 405(a)(2) excuses the omission of a copyright notice if a "reasonable effort" is made to add it. Plaintiff admits that no effort was made to add notice to the double-board Joker Poker programs. Mr. Kent, an employee of plaintiff, testified that at the time it was learned that a copyright notice should be added, a conversion from the double-board version to a single version was scheduled, and that it was decided that it would be cheaper to add the notice when the conversion was made.

Implicit in the concept of a "reasonable effort" under § 405(a)(2) is the expectation that an expenditure of time and money over and above that required in the normal course of business will be made. The evidence in the present case, however, establishes that plaintiff made no effort to add a copyright notice precisely because such an expenditure would have been required on its part. In other words, plaintiff decided to continue with business as usual until the scheduled conversion to a single board program, and decided not to make any effort whatsoever to add a copyright notice until then. Plaintiff presented no evidence to show that an unreasonable effort would have been required to reprogram the dou-

ble-board version of Joker Poker to add a copyright notice. We conclude that its inaction during this period is not within the spirit of the "reasonable effort" requirement of § 405(a)(2).[10]

Even if we do not consider the period during which plaintiff made no effort to add notice to the double board Joker Poker game, the fact remains that the notice that plaintiff eventually added was ineffective. We note that § 405(a)(2) does not provide that a reasonable effort to add an ineffective notice will be sufficient. One reason that Congress sought to continue to induce the use of notice was to ensure that the public would be informed "as to whether a particular work is copyrighted." At the same time, it wished to avoid "arbitrary and unjust forfeitures resulting from unintentional or relatively unimportant omissions or errors in the copyright notice." H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 143 (1976) (reprinted in [1976] U.S.Code Cong. & Admin.News 5659, 5759). In enacting § 405(a), Congress apparently attempted to achieve both of these goals by excusing omissions that pose an insignificant (or reduced) risk of misleading the public. Thus, the existence of a "relatively small number" of copies that lack notice does not create a significant risk that the public will be misled, and therefore is excused under § 405(a)(1). Similarly, a "reasonable effort" to add an effective notice under § 405(a)(2) reduces that risk, and therefore under § 405(a)(2) would also excuse the copyright owner from the consequences of initially omitting the notice. But where, as here, an effort is made but an ineffective notice is added, the risk that the public will be misled is not significantly reduced. Therefore, such an effort should not be regarded as adequate under 405(a)(2).[11]

10. The fact that only 28 games were sold without the notice is irrelevant in view of the fact that § 405(a)(2) requires that the reasonable effort be made to add notice to *all* copies.

11. In addition, the reasonable effort test implicitly recognizes that there are limits to what the copyright owner can do to add notice. For

example, in many cases it would be unreasonable to expect him to engage in a futile attempt to add notice to all copies of a work that had been distributed to the public. he would not be expected to locate copies that had passed out of his control. By contrast, it is reasonable to expect the copyright owner to learn the copyright notice requirements so that the notice that

*Actual Notice*

■ While the copyright notice for Joker Poker was inadequate, it is nevertheless clear that defendants knew that plaintiff was claiming copyright protection in the Joker Poker program.[12] Where an infringer is "wholly aware" of the existence of the copyright, courts generally afford protection to those who have substantially complied with the statutory notice requirements. *Uneeda Doll Co. v. Goldfarb Novelty Co.*, 373 F.2d 851, 854 & 853 (2d Cir.), *cert. dismissed* 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967). We therefore consider whether plaintiff substantially complied with the notice requirements of the copyright law.

■ As a general rule, in determining whether there has been substantial compliance with a statute, a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which it was adopted. *Samuels v. DeLucchi*, 286 F.2d 504, 506 (9th Cir.1961); *see Wilshire Oil Co. v. Costello*, 348 F.2d 241, 243–44 (9th Cir.1965); *Stasher v. Harger-Haldeman*, 58 Cal.2d 23, 22 Cal.Rptr. 657, 660, 372 P.2d 649, 652 (1962).[13] Thus, a copyright notice that contains a technical deviation from the statutory requirements may still be found to serve the statutory purpose of informing the public of the existence of copyright. *See Uneeda Doll,*

*supra,* 373 F.2d at 854 (court refused to allow "a barefaced infringer to invoke an innocent deviation from the letter [of the statute] that could not in the slightest degree have prejudiced him or the public.").

■ In the present case, however, we are unable to find that the copyright notice incorporated in the single-board Joker Poker program satisfies the intent of the statutory notice requirements. As our previous discussion indicates, both sections 401(c) and 405(a)(2) seek to provide a reasonable notice to the public. We have also shown, however, that under ordinary circumstances Joker Poker's notice would not be seen by a large percentage of the public. This is clearly more than a "technical" deviation, and thus precludes a finding of substantial compliance. *See Puddu v. Buonamici Statuary, Inc.*, 450 F.2d 401, 405 & n. 7 (2d Cir.1971).[14] The fact that these defendants—who are assuredly not innocent infringers—are aware of plaintiff's copyright claim is not controlling. To excuse compliance with the notice requirements on such a basis would tend to reduce the incentive to comply, since a copyright owner who omitted notice would be able to protect his rights simply by giving actual notice to infringing competitors, who would then be barred from defending on the basis of defective notice.

---

is added will be an effective one. This is an endeavor over which the copyright owner—perhaps with the assistance of competent counsel—has complete control. However, with respect to Joker Poker, it is apparent that this endeavor was not undertaken.

12. At the latest, defendants were made aware of plaintiff's copyright claim during the pendency of this litigation.

13. We believe that the following passage from *Inter-City Press, Inc., v. Siegfried,* 172 F.Supp. 37, 40 (W.D.Mo.1958) is consistent with this standard:

There must be substantial compliance with the [copyright notice requirements] in order that the copyright be preserved, the purpose of the notice being to inform the public of the copyright and to warn against republication.

14. We are aware that cases such as *Puddu* were decided under the pre-1978 statute, which was somewhat more restrictive in terms of notice

requirements. See Act of July 30, 1947, Pub.L. No. 281 § 20, 61 Stat. 652, 658 (1947). Nevertheless, the essential purpose of the notice requirement remains the same under the current copyright statute. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 143 (reprinted in [1976] U.S. Code Cong. & Admin.News 5659, 5759).

We need not decide at this time whether a future effort to add an adequate notice would entitle plaintiff to copyright protection under § 405(a)(2). *Compare* H.R.Rep. No. 1476, *supra,* at 147 (1976) (reprinted in [1976] U.S.Code Cong. & Admin.News at 5763 ("a work published without any copyright notice will still be subject to statutory protection for at least 5 years, whether the omission was partial or total, unintentional or deliberate"), *with Beacon Looms, Inc., v. S. Lichtenberg & Co.,* 552 F.Supp. 1305, 1313–14 (S.D.N.Y.1982) (failure to add notice within two years may place work in public domain).

*Registration*

The registration application for Keno Keypad [15] did not state that the program had previously been published. Defendants contend that plaintiff's failure to supply the Copyright Office with this information was a "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application" and is therefore a "reason for holding the registration invalid." Defendants' Post Hearing Brief at 11 (citing *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 988 (S.D.N.Y.1980)). Plaintiff contends that "nothing was intentionally concealed" from the Copyright Office. Affidavit of Kenneth McKenna (Document No. 49) at 2.

Shortly after we decided in *Videotronics I, supra,* that plaintiff was not entitled to protection under state law, plaintiff decided to seek protection under federal copyright law. Exh. U at 31. Plaintiff's counsel, Mr. McKenna, is not a copyright specialist and had no meaningful experience in that area of the law. He testified that he read some statutes pertaining to the issue of registration (*id.* at 32), and that he spoke with an attorney from San Francisco who sent him a completed registration form to use as a sample. *Id.* at 39.[16] The date of first publication had been left blank on this sample form. Nevertheless, the sample application bore a stamped registration number indicating that the Copyright Office had accepted it. See Exh. 4 to Exh. U.

██ Mr. McKenna also testified that he sought information from the Copyright Office in Washington, D.C. Because of the inconsistencies and uncertainties in his tes-

timony, and his failure to keep time records, or to document his telephone conversations in any way, it is extremely difficult to reconstruct the sequence of events with respect to the registration process. However, it is clear that about on or July 21, 1983, Mr. McKenna attempted to register nine of plaintiff's programs with the copyright office, but that because several of the applications that he submitted were made on Xerox copies of an official Copyright Office form, the Copyright Office refused to accept them. See Exh. U at 64, 72, & 124; Exh. U–1 at 6–7; Plaintiff's Exh. 2.

A preponderance of the evidence indicates that at that point Larisa Pastuchiv, an employee of the Copyright Office, telephoned Mr. McKenna to advise him of this problem. See Exh. U at 73, 80, & 124.[17] At that time, Mr. McKenna was "probably" also advised that the application process would take about six months, but was also informed of the existence of a "rapid processing" procedure. *Id.* at 72–73. On August 16, 1983, Mr. McKenna wrote a letter to Ms. Pastuchiv in which he requested rapid processing of three programs, including Keno Keypad. See Exh. 21 to Exh. U.

Mr. McKenna testified that he also spoke to an unidentified male employee of the Copyright Office, who told him that because the programs were "not in a book-type readable form, it is not ... published ...." Exh. U at 95. This conversation lasted for "[f]ifteen minutes, ... give or take five minutes either way." *Id.* He could not remember the date of this conver-

---

**15.** Since we have already found that Joker Poker is not entitled to copyright protection at this time, we need not consider whether the registration for that program was valid.

**16.** Defendants rely on Mr. McKenna's phone bills in support of their contention that this conversation did not take place. However, it appears that this conversation is not reflected in the phone bills because the San Francisco attorney returned Mr. McKenna's call. Exh. U at 41.

**17.** The evidence is conflicting on this point. At his deposition, Mr. McKenna testified that he contacted the Copyright Office "in order to see if there was any to speed this up," and that he

learned of the expedited processing procedure after several conversations had taken place. Exh. U at 62. This testimony is not consistent with his testimony, described in the text of this Order, that the expedited processing procedure was suggested to Mr. McKenna during the course of a telephone conversation initiated by the Copyright Office. However, we believe that the latter version more correctly describes the actual sequence of events, in part because Mr. McKenna's examination of a receipt from the Copyright Office appears to have refreshed his recollection of what took place. *See id.* at 124.

sation. However, he did testify that it occurred prior to his conversations with Ms. Pastuchiv. *Id.* at 66. His telephone bills indicate that an eleven minute call was placed to Washington, D.C. ((202) 287–5000) on July 1, 1983. Exh. 40 to Exh. U. At a hearing held before this Court on March 6, 1984, Mr. McKenna testified that he called this number in order to reach the Copyright Office.

Defendants have pointed out several inconsistencies in Mr. McKenna's testimony, but we view it as significant that they have not challenged Mr. McKenna's testimony that he was the recipient of the long distance calls by which he obtained much of the information that he relied upon in filling out the application at issue here. In addition, once the sequence of calls is placed in perspective, it is reasonable to conclude that the July 1 call concerned the necessity of including the publication date on the application form, since this call was made before the forms were submitted to the Copyright Office. Finally, we note that we need not reject Mr. McKenna's testimony in its entirety merely because we have found it to be unworthy of belief in some respects. *Lozano Enterprises v. N.L.R.B.*, 327 F.2d 814, 816 n. 1 (9th Cir.1964).

■ Finally, defendants point out that under 37 C.F.R. § 201.1(a), the Copyright Office does not give "legal opinions or advice on such matters as . . . [t]he sufficiency, extent or scope of compliance with the copyright law." The implication of this assertion appears to be that since the public is charged with knowledge of published regulations,[18] Mr. McKenna should not have sought advice from the Copyright Office concerning the necessity of supplying a publication date.

We note, however, that § 201.1 also provides that "[i]nformation relative to the operations of the Copyright Office is supplied without charge." The advice that Mr. McKenna sought was directly related to the question of how the Copyright Office's own form should be filled out. We conclude that this was a question "relative to the operations of the Copyright Office," and that therefore he was justified in seeking advice from that source. Indeed, it would seem that the Copyright Office would be the best source of information on that subject, and that to bar the public from utilizing the Copyright Office as a source of such information would unduly hamper the registration process.

The use that plaintiff seeks to make of the information that Mr. McKenna received must also be considered. If we were confronted with a situation in which plaintiff sought to estop the Copyright Office from invalidating the registration because of the advice he received from the employee, a different analysis—and one probably less favorable to plaintiff's position—would be required. Here, however, the correctness of the advice that Mr. McKenna received is not an issue. Instead, our concern is with whether Mr. McKenna acted in good faith in seeking the advice.

We conclude that plaintiff has met its burden of showing that Mr. McKenna in good faith sought and received advice concerning the necessity of putting a publication date on the application form, and that he satisfied himself in his own mind that that information need not be supplied. He can be criticized for not learning more about copyright law so that he could have prepared the applications properly and so have avoided the problem with which we are now faced. He may well have been mistaken in concluding that the publication date need not have been supplied.[19] How-

---

18. See *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) ("Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents."). Section 201.1 has been published in the Federal Register. *See* 24 Fed.Reg. 4955 (June 18, 1959), as amended at 32 Fed.Reg. 9315 (June 30, 1967); 42 Fed.Reg. 2962 (Jan. 14, 1977).

19. " 'Publication' is the distribution of copies . . . of a work to the public by sale or other transfer of ownership . . . ." 17 U.S.C. § 101. " 'Copies' are material objects . . . in which a work is fixed by any method . . . and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. *Id.* While § 101 does not

ever, his failure to obtain a correct and definitive opinion on the issue of whether a program could be considered published, means only that he may have been negligent;[20] it does not mean that he acted with fraudulent intent. *See Neel v. Barnard*, 24 Cal.2d 406, 150 P.2d 177, 184 (1944). In the absence of fraud, his mistake is not a basis for invalidating the registration. *Advisers, Inc., v. Wiesen-Hart*, 238 F.2d 706, 708 (6th Cir.1956), *cert. denied* 353 U.S. 949, 77 S.Ct. 861, 1 L.Ed.2d 858 (1957).

### Availability of Injunctive Relief

To obtain a preliminary injunction in a copyright infringement case, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and that the balance of hardships tips sharply in its favor. *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984); *see Sports Form Inc. v. United Press International, Inc.*, 686 F.2d 750, 753 (9th Cir.1982).

### Likelihood of Success on the Merits

■ In order to establish copyright infringement a plaintiff "must prove ownership of a valid copyright and 'copying' by the defendant." *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977); *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 614 (7th Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); *Universal City Studios v. Film Ventures International*, 543 F.Supp. 1134, 1139–40 (C.D.Cal.1982).

Defendants do not dispute that the Keno Keypad program can be the subject of copyright protection. Plaintiff has shown that it created the program, that it incorporated a valid copyright notice into the program, that it obtained a valid copyright registration, and that defendants have copied the program. Accordingly, we conclude that plaintiff has made an adequate showing of probable success on the merits.

### Possibility of Irreparable Injury

■ A showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm. *Apple Computer, supra*, 725 F.2d at 525. In addition, the evidence indicates that plaintiff is on the verge of bankruptcy due in part to loss of revenue that it expected to derive from Keno Keypad, a program that it created as a result of the investment of considerable time and money. If a preliminary injunction is not entered, customers will purchase the games from defendants rather than plaintiff, and plaintiff's business will be lost.[21] In *Apple Computer, supra*, the court stated that "[T]he jeopardy to Apple's investment and competitive position caused by [the defendant's] wholesale copying of many of its key operating programs ... satisf[ies] the requirement of irreparable harm needed to support a preliminary injunction." *Id.* at 525–26 (quoting from *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983), *cert. dismissed* — ·U.S. —, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984)). While in all probability plaintiff's investment is not as large as Apple's in absolute terms, it is clear that in a relative sense Keno Keypad is of great importance to it.

Accordingly, we conclude that defendants should be enjoined from infringing upon plaintiff's Keno Keypad program. In addition, we find that it appropriate that

explicitly make these definitions applicable to computer programs, it would have been justifiable to conclude that a computer program that is "fixed" in a chip or circuit board can be "published" within the meaning of that statute.

**20.** *See Smith v. Lewis*, 13 Cal.3d 349, 118 Cal. Rptr. 621, 627 & 628, 530 P.2d 589, 595 & 596 (1975) (attorney is expected to discover rules of law which, although not commonly known, may readily be found by standard research tech-niques), *overruled in part on other grounds In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 641 n. 14, 544 P.2d 561, 569 n. 14 (1976).

**21.** Defendants claim that they will be similarly harmed if an injunction is issued. However, in view of the fact that our injunction will apply only to Keno Keypad, Joker Poker remains as a source of revenue for defendants.

the infringing copies of Keno Keypad, be impounded. 17 U.S.C. § 503(a). However, since we have concluded that the copyright notice for Joker Poker was defective injunctive relief should not be granted with respect to that program.

The foregoing constitutes this Court's findings of fact and conclusions of law.

IT IS, THEREFORE, HEREBY ORDERED that a Preliminary Injunction shall be issued by the Court forthwith to restrain and enjoin defendants, their agents, servants, employees, attorneys, trustees, all persons or entities in active concert, privity or participation with them, all persons or entities acting under their authority, and all persons or entities who receive actual notice of this Order by personal service or otherwise; from engaging in any activity that would directly or indirectly infringe, or tend to infringe, upon the computer program entitled "MAPS—AMUSEMENT KENO KEYPAD VERSION," designated by the United States Copyright Office as "TXu 132–110," and registered in the name of the plaintiff with that office effective October 25, 1983. For the purposes of this Order, infringing activities include, but are not limited to, the publishing, duplicating, copying, manufacturing, licensing, exhibiting, displaying, advertising, promotion, exploiting, marketing, selling, offering for sale, or distributing, of any copy of the above program; or of any copy of the material embodied in or corresponding to the above program; or of any game or device derived from the above program; or of any game or device that is substantially similar to any game or device derived from the above program; or of any game or device of which the above program is a component, regardless of the name or trademark that is or may be assigned to such copy, game or device. The causation of, or knowing derivation of benefit from, any of the above activities, by any of the persons or entities to whom this Order is addressed, will also be deemed an infringing activity.

IT IS FURTHER ORDERED that the persons and entities to whom this Order is addressed shall forthwith deliver to the Clerk of this Court to be impounded during the pendency of this litigation, all copies of the above program or any version thereof. 17 U.S.C. § 503(a).

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction is denied in all other respects.